**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Miscellaneous Action No.

UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION,

Petitioner,

v.

STATE OF COLORADO BOARD OF PHARMACY,
PATTY SALAZAR, EXECUTIVE DIRECTOR OF THE COLORADO DEPARTMENT OF REGULATORY AGENCIES, and
APPRISS, INC.,

Respondents.

---

**DECLARATION OF DIVERSION PROGRAM MANAGER**
**KERRY R. HAMILTON**

---

I, Kerry R. Hamilton, declare as follows:

1. I serve as a Diversion Program Manager with the Drug Enforcement Administration ("DEA") of the United States Department of Justice. I am currently assigned to the DEA's Denver Field Division. I have been employed by the DEA since March 2000. I worked as a Diversion Investigator from March 2000 to January 2014, and then as a Supervisory Diversion Investigator from January 2014 to March 2018. I then worked at DEA's headquarters, within Diversion Operations, from March 2018 to August 2019, at which point I was named a Diversion Program Manager.

2. In my role as a Diversion Program Manager, I am charged, in general, with the duty of assisting the DEA in enforcing the Comprehensive Drug Abuse

Prevention and Control Act of 1970 (known as the "Controlled Substances Act" or "CSA"). My duties as a Diversion Program Manager include supervising various regulatory and investigative operations focused on preventing the diversion of legally manufactured but potentially dangerous controlled substances. I have extensive experience in conducting and supervising investigations relating to detecting the diversion of controlled substances for improper purposes. Some of my experience relates to investigations of pharmacies to determine whether they are complying with the CSA.

**A. The DEA's activities in preventing pharmacy diversion**

3. The CSA creates a "closed" system for regulating and monitoring controlled substances. Under that system, it is unlawful to distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA. The DEA regulates this closed system and tracks controlled substances all the way from the manufacturer to the end user.

4. Any person or entity who seeks to manufacture, distribute, prescribe, dispense, or administer a controlled substance must maintain a federal registration. A pharmacy thus must obtain a registration from the DEA before it may lawfully dispense controlled substances.

5. The DEA seeks to make sure that pharmacies with DEA registrations do not engage in conduct that causes or contributes to the diversion of controlled substances. For example, diversion can occur when a pharmacist dispenses a

controlled substance to a patient who lacks a valid prescription, or where the prescription is not for a legitimate medical purpose.

6. The regulations that have been promulgated under the CSA impose duties on pharmacists that help prevent diversion. Violations of these obligations can lead to criminal, civil, or administrative sanctions. For example, under the CSA regulations, a pharmacist has a corresponding responsibility to ensure that he or she dispenses a controlled substance to a patient only when the prescription for the controlled substance was "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). In addition, a pharmacist may violate the law by filling a prescription for a controlled substance in a manner outside "the usual course of his professional practice." 21 C.F.R. § 1306.06.

**B. The two pharmacies at issue whose dispensing practices the DEA is investigating**

7. The DEA is working with the United States Attorney's Office for the District of Colorado on investigations of certain pharmacies. These investigations focus on whether the pharmacies have complied with the CSA and accompanying regulations. Of concern to the DEA is whether those pharmacies violated the law in their dispensing of controlled substances and whether those potential violations of law contributed to misuse or diversion of such controlled substances, including opioids, in Colorado. Such violations of law could potentially contribute to significant public harm in Colorado, including the overdose or death of patients.

8. I make this declaration in connection with the ongoing CSA investigations of two pharmacies. Each pharmacy under investigation is a DEA registrant. I am familiar with these ongoing investigations.

9. The pharmacies are not named in this declaration because they have not been informed by the DEA that they are under investigation. Revealing their names would impact the ability of the DEA to perform its investigations of these pharmacies effectively.

10. The DEA has initiated an investigation of Registrant #1, a pharmacy located in Colorado, to determine whether its dispensing practices comply with its obligations under the CSA and accompanying regulations. The DEA has determined that a number of factors raise questions about whether Registrant #1 has dispensed, and may be continuing to dispense, controlled substances in ways that may violate the law.

11. For example, the DEA has determined that Registrant #1 is a pharmacy that has been selected by a number of patients of medical practitioners whose own prescribing practices have raised significant concern with the DEA. The DEA has also determined other factors of concern, such as that certain patients who obtain controlled substances from Registrant #1 reside at abnormal distances from the pharmacy. The DEA has also determined that Registrant #1 appears to use a method of dispensing controlled substances to patients that raises questions regarding the relationship of the prescribing medical practitioners to the pharmacy, as well as regarding the ability of

Registrant #1 to conduct proper due diligence on those patients to whom it dispenses controlled substances.

12. The DEA has also initiated an investigation of Registrant #2, another pharmacy located in Colorado, to determine whether its dispensing practices comply with its obligations under the CSA and accompanying regulations. The DEA has determined that a number of factors raise questions about whether Registrant #2 has dispensed, and may be continuing to dispense, controlled substances in ways that may violate the law.

13. For example, the DEA has determined that Registrant #2 ranked in the last two years as one of the top pharmacy purchasers in Colorado for three different types of opioids. The DEA has also determined that Registrant #2 is a pharmacy that has been selected by a number of patients of medical practitioners whose own prescribing practices have raised concern with the DEA.

14. In each of these two investigations, the DEA is seeking to assess whether these pharmacies and their pharmacists have dispensed controlled substances in compliance with their various obligations under the CSA.

**C. The DEA's need for PDMP information in its investigations**

15. The DEA uses various tools to determine whether pharmacies with DEA registrations are complying with their obligations under the CSA and whether they are engaged in conduct that may constitute or contribute to unlawful diversion. Among other things, the DEA conducts periodic audits of pharmacies. In addition, as it has

done here, the DEA also may initiate an investigation of a pharmacy to determine whether the pharmacy is complying with the CSA.

16. One tool the DEA uses to aid in its investigations is the authority to issue subpoenas. The DEA has the federal statutory authority to issue a subpoena to require the production of any records whenever the DEA determines that the records would be "relevant or material" to an investigation under the CSA. 21 U.S.C. § 876(a).

17. In my experience with DEA investigations of pharmacies, it is common for the DEA to issue subpoenas under 21 U.S.C. § 876 to state Prescription Drug Monitoring Programs to obtain information about dispensing by those pharmacies of controlled substances. Almost all states have created Prescription Drug Monitoring Programs ("PDMPs") that require pharmacies within the state to submit data to the PDMP showing the controlled substances that the pharmacy has dispensed to patients.

18. The DEA finds this data from state PDMPs highly useful in advancing its investigations of pharmacies, in several ways. First, the PDMP data shows what the pharmacy itself has reported to the state, on an ongoing basis, about its dispensing of controlled substances. The PDMP maintains data extending back for many years; in contrast, pharmacies are only required by federal regulation to maintain controlled substances records for two years.

19. Second, this PDMP data is narrowly tailored to the potentially dangerous drugs the DEA regulates—controlled substances—and does not include all the other prescription and non-prescription medications the pharmacies may sell.

20. Third, the DEA can obtain a pharmacy's dispensing information from the PDMP before the DEA alerts the pharmacy that it is under investigation.

21. Fourth, the PDMP data for a pharmacy can show "red flags"—factors that could have been identified by the pharmacy at the time it dispensed the controlled substance to a patient and that may signal concerns about whether the pharmacy acted properly in dispensing the controlled substance. Controlled substances include numerous medications subject to potential abuse. The PDMP data can shed light on whether a pharmacist who filled a prescription for a controlled substance acted outside the usual course of his professional practice, or whether the pharmacist filled prescriptions for controlled substances where the prescriptions were not issued for a legitimate medical purpose.

22. The PDMP data for a pharmacy can point to many different types of these red flags. For example, the Colorado PDMP data includes not just the nature of the controlled substances dispensed to a patient, but also its quantity, volume, and strength, which allows the DEA to identify high-volume and high-strength prescribing to a patient.[1] The PDMP data also shows whether a pharmacy has refilled a prescription for a patient with unusual frequency. It shows how many prescriptions the pharmacies filled for particular practitioners. It shows what a pharmacist likely would have seen, upon checking the PDMP, about that pharmacy's prior dispensing history to a patient. It

[1] For example, all opioids have a conversion factor, which allows a comparison of, in essence, the drug's total strength or opioid effect.

also shows payment information, such as whether the prescription was paid for by insurance, by the federal government, or in cash.

23. In addition, the PDMP data shows whether the pharmacy dispensed notable combinations of controlled substances to a patient around the same time. There are multiple combinations of different types of controlled substances—not just opioids—that, if used by the same patient, are known to be particularly dangerous, or may suggest potential abuse. In addition, prescriptions for certain combinations of controlled substances could raise a red flag because it might be unusual for prescriptions for those different types of controlled substances to be issued by the same medical practitioner.

24. The DEA has repeatedly subpoenaed and obtained Colorado PDMP data in support of investigations of pharmacies and has relied on the PDMP information to advance those investigations.

**D. The DEA's need for patient-identifying information**

25. Colorado's PDMP captures data showing each time a pharmacy dispensed a controlled substance to a patient. The PDMP data includes the patient's name and other basic patient-identifying information, such as the patient's address and birthdate.

26. The DEA has routinely found that this patient-identifying information collected by the PDMP is highly useful in advancing the DEA's investigations of a pharmacy, for several reasons.

27. First, the DEA can use this patient-specific information to "connect the dots" with other information or investigative leads already in the DEA's possession. For example, the DEA can examine the patient names to determine whether patients who obtained their controlled substances at the pharmacy are known to have suffered from or died from an overdose. It can examine whether the patient is known to have engaged in criminal activity by unlawfully reselling the medications, or is under investigation. The DEA can use the patient names to determine whether the patients who filled their prescriptions at that pharmacy are patients of a prescriber who the DEA is already investigating.

28. Second, the DEA can use the patient names and other patient-identifying information in many ways to shed light on the effectiveness of the pharmacy's overall controls on improper dispensing. The patient names may reveal that the pharmacy dispensed controlled substances to a patient who may have been using a false identity or sharing controlled substances with other patients. For example, the DEA can use the patient-specific information to determine whether the pharmacy dispensed to multiple patients who report living at the same address. It can show whether a patient lived an unusual distance from a pharmacy or prescriber. It may reveal patients who obtained similar prescriptions close in time and who have the same surname, or patients who used variations on the same name. It may reveal patients who are employees of the pharmacy or of other organizations of concern.

29. Third, the patient-identifying information is necessary for the DEA to investigate a pharmacy efficiently and follow up on leads quickly. For example,

obtaining the names of the patients and their prescribers enables the DEA to determine which individuals it may wish to interview. The DEA can use a patient interview to determine whether the patient actually received a prescription from a prescriber, or whether the patient did in fact visit the pharmacy and receive the medication shown in the PDMP data.

30. Finally, the DEA, in an investigation of a pharmacy, seeks to obtain a full picture of a pharmacy's overall dispensing practices, and the patient-specific information enables the DEA to obtain and then understand this full picture. The patient-identifying data is very helpful in this overall assessment of the pharmacy's dispensing practices. For example, DEA conducts automated analyses, and the PDMP's patient-identifying information is necessary to make this automated analysis effective and comprehensive. This automated analysis is aided by the fact that the PDMP data is electronic, whereas a pharmacy may maintain its records in hard copy format.

31. Until recently, the Colorado Pharmacy Board had not raised an objection about producing, in response to DEA subpoenas, PDMP pharmacy data that includes patient-identifying information. In fact, earlier this year, in the investigation of Registrant #2, the DEA issued a subpoena seeking Colorado PDMP data relating to that pharmacy for two years of data. At that time, the Pharmacy Board complied with that subpoena and supplied all of the pharmacy's data, including patient-identifying information. That information that the DEA obtained from the PDMP has been used to advance its investigation.

**E. The subpoenas for the PDMP data**

32. The DEA has determined, in its investigations of Registrant #1 and Registrant #2, that their pharmacy dispensing data, as reported to the PDMP, was highly relevant and material to the advancement of the investigations of those registrants.

33. In August 2019, the DEA issued administrative subpoenas, under the authority of 21 U.S.C. § 876(a), for the Colorado PDMP data on those two pharmacies. The DEA issued subpoena MK-19-823246 relating to the investigation of Registrant #1 on August 2, 2019. *See* Attachment 1. The DEA issued subpoena MK-19-875540 relating to the investigation of Registrant #2 on August 20, 2019. *See* Attachment 2. (The information identifying those registrants is redacted from those two attachments.)

34. In issuing the subpoenas to the Colorado PDMP, the DEA identified the data sought using the forms on the Colorado Department of Regulatory Agencies' website. *See* https://www.colorado.gov/pacific/dora-pdmp/forms-22. With each subpoena, the DEA filled out the PDMP's "Law Enforcement Form for PDMP Data." In the block marked Pharmacy Information, the DEA filled in the name of the pharmacy and its registration number and address. The DEA provided the "Date range for the dispensing report"; for each investigation, the DEA sought the pharmacy's PDMP information covering the scope of the investigation, which is from January 2014 to the present. *See* Attachments 1, 2. The DEA also followed the state's preferred process in submitting its subpoenas and the forms, by sending the subpoena and form to the email address listed on the form.

35. It is the DEA's understanding that the PDMP data collected by the Colorado Pharmacy Board resides in a database operated by a private company, Appriss, Inc., a Kentucky corporation that has been designated pursuant to Colorado statute. Specifically, Appriss has been designated under the state's PDMP program as a "private agency or organization" tasked with "carrying out the data collection and processing duties required by this part 4 [the statutory provisions implementing the PDMP]." *See* Colo. Rev. Stat. § 12-280-403(5). The state's website explains that "Appriss's PMP Clearinghouse is a web-based program that facilitates the collection, analysis, and reporting of information on the prescribing, dispensing, and use of controlled substance prescription drugs." *See* Data Submission Dispenser Guide, Colorado Prescription Monitoring Program, at 4, found at https://drive.google.com/file/d/0B-K5DhxXxJZbVnAyMkgzSVBwWUk/view .

36. It is the DEA's understanding that the cost of processing these subpoenas is built into the contract with Appriss. Based on the DEA's past experience, processing a DEA subpoena for a pharmacy's PMDP data typically takes no more than a week or two.

**F. The failure to comply with the subpoenas**

37. In September 2019, the Colorado Pharmacy Board indicated, through counsel for the Department of Regulatory Agencies, that it would not fully comply with the subpoenas. The Board indicated through its counsel that it would produce the pharmacy data only if it could redact the patient-identifying data from the production.

38. The Board appeared to rely on concerns about the private nature of the information about controlled substances.

**G. Protections for data obtained by the DEA through subpoenas**

39. In response, the DEA, through counsel, explained that the patient-identifying information gathered through its subpoenas would be protected from disclosure.

40. When data is obtained by the DEA through administrative subpoenas, the data is protected against public disclosure. By law, the DEA can release information it obtained under administrative subpoena only under limited circumstances—"to Federal, State, and local officials engaged in the enforcement of laws related to controlled substances" and to prosecutors and state licensing boards. 28 C.F.R. § 0.103(a)(1), (2).

41. This information is handled securely and is protected from public disclosure. Various statutes prohibit federal employees from the wrongful disclosure of information. *See, e.g.,* 18 U.S.C. §§ 1030, 1905. In the event of public requests for such information, the Freedom of Information Act provides barriers to the release of personal information about individuals. *See* 5 U.S.C. § 552(b)(6), (7)(D) (providing exemptions from disclosure for information that would involve an invasion of personal privacy).

42. In addition, the Department of Justice's Justice Manual establishes that unauthorized disclosures by Department of Justice personnel of sensitive personal or

proprietary information could lead to criminal prosecution or administrative action. *See* Justice Manual § 1.7.100.

**H. The need for judicial resolution**

43. After multiple discussions between counsel, the parties were unable to resolve the dispute.

44. The Board's counsel has further indicated that for future subpoenas from the DEA seeking the PDMP data for a pharmacy, the Board will not produce the pharmacy data to the DEA without redacting all the patient-identifying data from the production.

45. The DEA seeks enforcement of the subpoenas. The failure to comply with the two subpoenas is interfering with the DEA's ability to efficiently advance its investigations of the two pharmacies and take any action needed to prevent any unlawful diversion of controlled substances and to address the potential risk of serious harm to those who might be affected by the diversion.

* * *

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

By: Kerry R. Hamilton

Executed on: 11/01/19

# Attachment 1:

# Subpoena regarding Registrant #1

# U.S. DEPARTMENT OF JUSTICE/DRUG ENFORCEMENT ADMINISTRATION SUBPOENA

In the matter of the investigation of
Case No: MK-15-0018
Subpoena No. MK-19-823246

**TO:** Colorado State Board of Pharmacy PDMP
AT: Dora 1560 Broadway Suite 1350 Denver, CO 80202

**PHONE:** 3038945957
**FAX:** 3038690133

**GREETING:** By the service of this subpoena upon you by Diversion Investigator Kathryn Kohman who is authorized to serve it, you are hereby commanded and required to appear before Diversion Investigator Kathryn Kohman, an officer of the Drug Enforcement Administration to give testimony and to bring with you and produce for examination the following books, records, and papers at the time and place hereinafter set forth:

Pursuant to an investigation of violations of 21 U.S.C. 801 et seq., please provide the following information. We request that you provide a pharmacy summary of all filled controlled substances for: [REDACTED] [REDACTED] Drug Enforcement Administration Registration Number [REDACTED] The time frame request is January 1, 2014 through the present. This summary should include the prescribing practitioner and their DEA number, prescription number, drug(s), quantity, date prescribed, date dispensed, method of payment, MME, patient's name, date of birth, and address. Please also include a certificate of authenticity.

Please do not disclose the existence of this request or investigation for an indefinite time period. Any such disclosure could impede the criminal investigation being conducted and interfere with the enforcement of the Controlled Substances Act.

Please direct questions concerning this subpoena and/or responses to DI Kathryn Kohman, 571-387-2277.

Place and time for appearance: At Kathryn.E.Kohman@usdoj.gov or 12154 E. Easter Ave., Centennial, CO 80112 on the 13th day of August, 2019 at 09:00 AM. In lieu of personal appearance, please email records to Kathryn.e.kohman@usdoj.gov or fax to 720-895-4386.

Failure to comply with this subpoena will render you liable to proceedings in the district court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience.

Issued under authority of Sec. 506 of the Comprehensive Drug
Abuse Prevention and Control Act of 1970, Public Law No. 91-513
(21 U.S.C. 876)

**ORIGINAL**

Signature: Daniel J. McCormick ADPM
Daniel J. McCormick
Acting Diversion Program Manager

Issued this 2nd day of Aug 2019

FORM DEA-79



# Colorado State Board of Pharmacy
# Prescription Drug Monitoring Program

1560 Broadway, Suite 1350
Denver, CO 80202

(303) 894-5957
(303) 869-0133 - FAX
711 - V/TDD

## LAW ENFORCEMENT FORM FOR PDMP PHARMACY DATA

### OFFICER INFORMATION:

Name: Kathryn Kohman Division: DEA Badge Number: NA

Agency Address: 12154 E. Easter Ave, Centennial, CO 80112
Street City State Zip
[Report will be mailed to this address]

Email address: Kathryn.e.Kohman@usdoj.gov Phone number: 571-387-2277

### PHARMACY INFORMATION:

Name: [redacted] Pharmacy Registration Number: ________

DEA Registration: [redacted]

Address: ________
Street City State Zip

Other identifying information: ________

### REQUEST INFORMATION:

Date range for the dispensing report: 1/1/14 - Present Case Number: MK-15-0018

**Attach a copy of the subpoena or court order.**

**I acknowledge and verify the following:**

- **The information I am accessing is for a case that I am currently investigating and**
- **If I release, obtain, or attempt to obtain information from the program in violation of CRS 12-42.5-404, I may be fined for each violation and may be subject to other civil or criminal penalties or liabilities under the law.**

**In the event the attached subpoena or court order was issued by a court in a jurisdiction outside of the State of Colorado, in addition to the above I further acknowledge and verify the following:**

- **The release of information shall not constitute an acceptance of jurisdiction over the Colorado State Board of Pharmacy (Board) by the issuing court for any purpose beyond the release of the information that is specifically requested in the attached subpoena or official court order.**

[signature]
Authorized law enforcement representative signature:

8/3/19
Date:

Mail to 1560 Broadway, Ste. 1350, Denver, CO 80202
Fax to 303-869-0133
E-Mail to pdmpinqr@state.co.us

# Attachment 2:

# Subpoena regarding Registrant #2

# U.S. DEPARTMENT OF JUSTICE/DRUG ENFORCEMENT ADMINISTRATION SUBPOENA

In the matter of the investigation of
Case No: MK-18-0042
Subpoena No. MK-19-875540

**TO:** Colorado Board of Pharmacy
AT: 1560 Broadway #1310 Denver, CO 80202

**PHONE:** 3038947754
**FAX:** 3038947692

**GREETING:** By the service of this subpoena upon you by DI Shannon Keller / IA Morgan Pillard who is authorized to serve it, you are hereby commanded and required to appear before said agent, an officer of the Drug Enforcement Administration to give testimony and to bring with you and produce for examination the following books, records, and papers at the time and place hereinafter set forth:

Pursuant to an investigation of violations of 21 U.S.C. Section 801 et seq., please provide the following information. This is an administrative subpoena issued by the Drug Enforcement Administration (DEA), a federal law enforcement agency, for records that may include protected health information. DEA is authorized by 21 U.S.C. § 876 to issue an administrative subpoena and is permitted by 45 C.F.R. § 164.512 (f) to request protected health information. The information sought is relevant and material to a legitimate law enforcement inquiry; the subpoena is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and de-identified information cannot reasonably be used.

Please provide all controlled substances dispensed from [redacted] DEA# [redacted] from 01/01/2014 to present.

Please do not disclose the existence of this request or investigation for an indefinite time period. Any such disclosure could impede the criminal investigation being conducted and interfere with the enforcement of the Controlled Substances Act.

Please direct questions concerning this subpoena and/or responses to IA Morgan E. Pillard, 720-895-4162.

Place and time for appearance: At 12154 E. Easter Ave Centennial CO 80112 United States on the 31st day of August, 2019 at 09:00 AM. In lieu of personal appearance, please email records to Morgan.E.Pillard@usdoj.gov or fax to 571-387-2725.

Failure to comply with this subpoena will render you liable to proceedings in the district court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience.

Issued under authority of Sec. 506 of the Comprehensive Drug Abuse Prevention and Control Act of 1970, Public Law No. 91-513 (21 U.S.C. 876)

**ORIGINAL**

Signature:

Issued this 20th day of Aug 2019

Darren R Schwindt
GS

FORM DEA-79




Division of Professions and Occupations

Healthcare Branch
Colorado Prescription Drug
Monitoring Program (PDMP)

## LAW ENFORCEMENT FORM FOR PDMP DATA

### OFFICER INFORMATION:

Name: Morgan Ruard Division: DEA Badge Number: N/A

Agency Address: 12154 E Easter Ave Centennial CO 80112
Street City State Zip

Email address: Morgan.E.Ruard@usdoj.gov Phone number: 720-895-4162

### PHARMACY INFORMATION:

Name: [REDACTED] Pharmacy Registration Number: [REDACTED]

DEA Registration (if known): [REDACTED]

Address: [REDACTED]
Street City State Zip

Other identifying information: N/A

### REQUEST INFORMATION:

Date range for the dispensing report: 01/01/14 to Present Case Number: MK-18-0042

**Attach a copy of the subpoena or court order.**

**I acknowledge and verify the following:**

- **The information I am accessing is for a suspect whom I am currently investigating and**
- **If I release, obtain, or attempt to obtain information from the program in violation of CRS 12-42.5-400, I may be fined for each violation and may be subject to other civil or criminal penalties or liabilities under the law.**

**In the event the attached subpoena or court order was issued by a court in a jurisdiction outside of the State of Colorado, in addition to the above I further acknowledge and verify the following:**

- **The release of information shall not constitute an acceptance of jurisdiction over the Colorado State Board of Pharmacy (Board) by the issuing court for any purpose beyond the release of the information that is specifically requested in the attached subpoena or official court order.**

[signature]
Authorized law enforcement representative signature:

8/28/19
Date:

Mail to 1560 Broadway, Ste. 1350, Denver, CO 80202
Fax to 303-869-0133
E-Mail to pdmpinqr@state.co.us



STATE OF COLORADO 1876