# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-mc-00105-RM

UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION,

    Petitioner,

v.

STATE OF COLORADO BOARD OF PHARMACY,
PATTY SALAZAR, EXECUTIVE DIRECTOR OF THE COLORADO DEPARTMENT OF REGULATORY AGENCIES, and
APPRISS, INC.,

    Respondents.

## DECLARATION OF KAREN M McGOVERN

I, **Karen M. McGovern**, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury of the laws of the United States of America as follows:

**1.** I am the Deputy Division Director, Legal Affairs for the Division of Professions and Occupations with the Colorado Department of Regulatory Agencies. I am responsible for supervising legal matters pertaining to my Division, including subpoenas and related proceedings involving the Colorado Board of Pharmacy (herein, "Pharmacy Board') in connection with its Prescription Drug Monitoring Program (herein, "PDMP"). I report to the Director of the Division, who in turn reports to Patty Salazar, the Executive Director of the Colorado Department of Regulatory Agencies. I respectfully submit this declaration based on my personal knowledge. This submission is filed in connection with the Brief in Opposition (herein, "Opposition Brief") filed by the State Respondents on this date in response to the Petition for

Expedited Order Enforcing Administrative Subpoenas (herein, "Petition") filed on November 4, 2019, by Petitioner United State Department of Justice, Drug Enforcement Administration (herein, "DEA").

2. I am personally familiar with the matters set out herein.

3. I have worked for the Division since November 13, 2013, and I have held my position in charge of legal affairs for the Division since November 16, 2016.  I am familiar with the operation of the PDMP both today and in the past, as well as the program's legislative and regulatory history.

4. The Pharmacy Board established the PDMP database under state law in 2005. The PDMP was reauthorized in 2011.

5. Colorado's PDMP was established as a regulatory program housed within the Pharmacy Board with a focus on protecting patient safety, aimed at providing data to prescribers and pharmacists about patients under their care, with stringent restrictions on access to the prescription data, as opposed to a law enforcement program housed within a criminal enforcement agency with a mission of prosecuting criminal violations.  This choice in the format of the program was an intentional effort to protect the privacy of the data compiled by the system.

6. The PDMP database is a tool for prescribers and dispensers to help reduce prescription drug misuse, abuse and diversion by helping them make more informed decisions when considering prescribing or dispensing a controlled substance to a patient.

7. Each time a controlled substance is dispensed to an individual, the controlled substance is required to be reported to the PDMP through the pharmacy. The information required to be reported to the PDMP is listed in Board Rule 23.00.40, 3 CCR 719-1.

**8.** Any prescriber who holds a current registration issued by the DEA and every pharmacist is required to register and maintain a user account with the PDMP. *See* Colo. Rev. Stat. § 12-280-403(2)(a).

**9.** Prescribers are not required under the PDMP statute to query the PDMP when prescribing controlled substances, except that prescribers are required to query the PDMP prior to a second fill of a controlled substance. Pharmacists are not required to query the PDMP for any patient prior to dispensing a controlled substance.

**10.** Information related to queries that a prescriber or a pharmacist may have entered in the system is housed separately from other PDMP data, and such query data are not among the records sought by the administrative subpoenas issued by the DEA in this matter. It is not possible to determine based on a pharmacy's PDMP report whether a query was conducted on a patient prior to dispensing a controlled substance.

**11.** The Pharmacy Board, through the Division of Professions and Occupations, contracted with Appriss, Inc. ("Appriss") to operate the PDMP database, collect and store the PDMP data, and provide reports as requested by the Pharmacy Board or DPO

**12.** Appriss' PMP Clearinghouse is a web-based program that facilitates the collection, analysis, and reporting of information on the prescribing, dispensing, and use of controlled substance prescription drugs.

**13.** Appriss maintains the data on behalf of the Board. Appriss is not authorized to release the PDMP data without explicit approval and direction from the Board. Any request or demand to Appriss from a third party for PDMP information would be immediately forwarded to the Division on behalf of the Board.

14. The program currently collects data from more than 9,000 pharmacists at 899 actively licensed Colorado pharmacies in Colorado, as well as another 411 actively licensed out-of-state pharmacies that are filling prescriptions for patients in Colorado. The program compiles data on any prescription that such pharmacists fill for a medication listed in the DEA's Schedule II through V schedules of controlled substances. Pharmacists are required to upload data to the program at least once every business day.

15. Currently, the earliest "fill date" (the date the prescription was filled) in the program's database is June 2011. From June 1, 2011 through November 4, 2019, the PDMP database contained 63,249,731 prescriptions. In addition to information concerning the pharmacist who filled a prescription, each database record also captures the name, address, and identifying details for the patient who received the prescription, the name, DEA registration number, and address of the prescriber who issued the prescription, and then the details of the prescription itself, including the type of payment used for the prescription.

16. Because the PDMP database compiles data on the specific drugs that a patient is prescribed, in what dosage, and over what period of time, it is possible in many cases to deduce the nature of a patient's ailment solely from the data contained in the PDMP records, such as, for example, a prescription for buprenorphine/naloxone, which is indicated for a patient with narcotic dependence who is suffering from withdrawal symptoms, or a prescription for pregabalin, which is indicated for a patient with fibromyalgia, or diabetic neuropathy, post-herpetic neuralgia, or spinal cord injury

17. Under state law, the information in the PDMP database is strictly controlled, with unauthorized access to such data punishable by civil fines of up to $10,000 for each violation of the statute. *See* Colo. Rev. Stat. § 12-280-406. The statute authorizes pharmacists (as well as

prescribers) to query the PDMP database for information concerning prescriptions filled for patients under the prescriber's or pharmacist's care to ensure patient safety. *See* Colo. Rev. Stat. § 12-280-404(3). Apart from responses to such queries by authorized dispensers or prescribers concerning information about patients under those licensees' care, the information in the PDMP database is not available without prior approval from the PDMP staff.

18. Colorado's PDMP statute authorizes law enforcement agencies to obtain records from the PDMP database only "so long as the information released is specific to an individual patient, pharmacy, or practitioner and is part of a bona fide investigation, and the request for information is accompanied by an official court order or subpoena." Colo. Rev. Stat. § 12-280-404(3) (g). The Colorado General Assembly declared that authorizing this limited form of law enforcement access to PDMP records "provides a mechanism for law enforcement officials and regulatory boards to efficiently investigate practitioner behavior that is potentially harmful to the public." Colo. Rev. Stat. § 12-280-401(d).

19. Allowing for limited law enforcement access to the PDMP database only when the requested records pertained to a patient, prescriber, or dispenser and only when such records involving that specific person pertained to a "bona fide investigation" reflected a legislative compromise aimed at protecting the privacy interests of patients while at the same time serving the important public interest of regulating "practitioner behavior."

20. Since January 1, 2018, the Division has received 230 subpoenas for PDMP data from the DEA, by far the most prolific requester of PDMP records than all other law enforcement agencies combined, accounting for more than 80% of the subpoenas and warrants received by the PDMP during that period.

21. In the past, the DEA's subpoenas were generally targeted at data concerning a specific patient or specific prescriber, seeking records within a narrow window of time. When the Division received these targeted subpoenas, the PDMP's staff produced the requested data as required by the state law.

22. Although that pattern of narrowly targeted subpoenas has continued into 2019 for the majority of the DEA's subpoenas, the DEA is now pursuing much broader subpoenas seeking an entire pharmacy's whole compendium of all prescription records without regard to any particular patient or any particular prescriber, spanning the gamut of controlled substances including substantial numbers of non-opioid medications, and with no bona fide investigation of any specific patient or prescriber.

23. These broad, untargeted requests have sought to compile a pharmacy's entire record of prescriptions so as to create a fishing pond in which the DEA's investigators might locate potential targets for further, subsequent investigation, rather than to focus on a specific investigative target that had been developed by the DEA through outside investigation.

24. This pattern culminated in a pair of subpoenas served on the Division in June 2019 seeking more than five years of prescription records for two of the largest chains of pharmacies in Colorado, encompassing more than 300 pharmacies and more than half of the entire PDMP database for the specified time period.

25. Attached hereto as **Exhibit 1** are copies, redacted to remove identifying information that would show the subpoena targets but otherwise true and correct, of the two subpoenas (MK-19-656106 and MK-19-631888) dated June 3, 2019, which were issued by the DEA to the PDMP seeking prescription records for more than 300 pharmacies in Colorado.

26. In response to these June subpoenas, the Division objected to the disclosure of patient identifying information on the grounds that disclosure of the patient identities in more than 18 million prescriptions was an unwarranted invasion of privacy. Instead, the Division complied with the subpoenas through a two-step process where it first produced deidentified records in which the patients' identities were replaced with unique pseudonyms, and it next offered to produce specific patient identities for particular unique pseudonyms when the DEA indicated the particular pseudonym had been identified as being associated with a bona fide investigation of criminal or improper conduct. (Appriss provided the de-identified data sets using an algorithm that matches unique patients based on data such as first name, last name, date of birth, and address, and then replaces those fields with a single unique, numeric pseudonym.)

27. The data sets for these two subpoenas required approximately three weeks to assemble. They were produced to the DEA on September 20, 2019.

28. The DEA has made no follow up request to the PDMP for specific patient identities from those pseudonymized data sets.

29. Separately, the two new subpoenas at issue in this proceeding – MK-19-823246 (Registrant #1) and MK-19-875540 (Registrant #2) – are the latest in the DEA's emerging pattern of recent subpoenas seeking an entire pharmacy's full compendium of all PDMP records. In connection with the Opposition Brief by Respondents, my Division has prepared responsive data sets for both of these subpoenas, and they are to be lodged with the Court (and served on the DEA). (The Excel files are contained in the tangible exhibit accompanying the Declaration of Justin Wipf, submitted concurrently with my Declaration here.) The data sets produced here conform to the Division's two-step protocol of providing deidentified prescription records with the patient's identifying information replaced with a unique numeric pseudonym, and an offer to

provide specific patient identifying information when the DEA uncovers an articulable basis to believe the patient's identity is necessary to a bona fide investigation of criminal or improper conduct.

30.     Subpoena MK-19-823246, attached as Attachment 1 to the Declaration of Kerry R. Hamilton (Dkt. No. 1-1, at 15-17, Nov. 4, 2019), was issued August 2, 2019, and seeks nearly six years of prescription records from the PDMP database for the "Registrant #1" pharmacy. This pharmacy's archive of prescription records in the PDMP database spans 116,386 prescriptions issued to 7,597 patients by 444 different prescribers. More than 21,000 of Registrant #1's prescriptions (18.4%) involve non-opioid medicines, including 3,691 prescriptions for Adderall or dextroamphetamine (for attention-deficit/hyperactivity disorder (ADHD), narcolepsy, and other brain disorders), 2,695 prescriptions for Alprozolam (for anxiety and panic disorders), 1,915 prescriptions for Clonazepam (for seizures and anxiety/panic disorders), and 433 prescriptions for Vyvanse (for binge-eating disorders). Only 180 prescriptions, less than 0.2% of the entire Registrant #1's PDMP archive, involve prescripions for patients who listed a zip code outside of Colorado. The single largest prescriber in Registrant #1's PDMP archive, with 13,659 prescription records, is an adult/geriatric nurse practitioner whose practice is focused on pain management.

31.     Subpoena No. MK-19-875540, attached as Attachment 2 to the Hamilton Declaration (Dkt. No. 1-1, at 18-20, Nov. 4, 2019), was issued August 20, 2019, and covers more than six years of prescription records from the PDMP database for the Registrant #2 pharmacy. This pharmacy's archive of prescription records in the PDMP database spans 86,037 prescriptions issued to 6,488 patients by 2,080 different prescribers. More than half, 55.4%, of Registrant #2's prescriptions (47,688 prescriptions) involve non-opioid medicines, including

5,774 prescriptions for Androgel or testosterone pills (for hormone replacement and sexual disorders), 2,115 prescriptions for Alprozolam, 1,635 prescriptions for Clonazepam, 1,331 prescriptions for Adderall or dextroamphetamine, and 503 for Vyvanse.  A total of 786 of Registrant #2's prescriptions in the PDMP archive, just 0.9%, involve prescripions for patients who listed a zip code outside of Colorado. The single largest prescriber in Registrant #2's PDMP archive, with 5,687 prescription records, is an advanced registered nurse practitioner whose practice is focused on pain mangement.

    **32.**    The foregoing is true and accurate, to the best of my knowledge.

DATED at Denver, Colorado, this 6th day of December, 2019.

/s/ _____
KAREN M. McGOVERN
Deputy Division Director, Legal Affairs
  Division of Professions & Occupations
Colorado Department of Regulatory Agencies