# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-mc-00105-RM

UNITED STATES DEPARTMENT OF JUSTICE, DRUG
ENFORCEMENT ADMINISTRATION,

      Petitioner,

v.

STATE OF COLORADO BOARD OF PHARMACY,
PATTY SALAZAR, EXECUTIVE DIRECTOR OF THE COLORADO
DEPARTMENT OF REGULATORY AGENCIES, and
APPRISS, INC.,

      Respondents.

---

## EXHIBIT 1 TO DECLARATION OF CHRISTOPHER P. BEALL

---

**PHILIP J. WEISER**
Attorney General

**NATALIE HANLON LEH**
Chief Deputy Attorney General

**JUNE TAYLOR**
Chief Operating Officer

**ERIC R. OLSON**
Solicitor Genera



**STATE OF COLORADO**
**DEPARTMENT OF LAW**

**RALPH L. CARR**
**COLORADO JUDICIAL CENTER**
1300 Broadway, 10th Floor
Denver, Colorado  80203
Phone (720) 508-6000

**CHRISTOPHER P. BEALL**
Deputy Attorney General
**Business & Licensing Section**

Tuesday, July 23, 2019

Kevin Traskos
Chief, Civil Division
United States Attorney's Office | District of Colorado
1801 California Street, Suite 1600
Denver, CO  80202

RE:     *In re Investigation of Case No. GFMK-19-9098*, U.S. Department of Justice –
        Drug Enforcement Administration
           -    Subpoena Nos. MK-19-655844, MK-19-656106 & MK-19-631888

Dear Kevin:

This letter follows up on my prior correspondence from last month, as well as the
extended consultations by telephone that we have had over the last several weeks
concerning the above-referenced subpoenas.

In light of our various discussions, culminating in the telephone call on Friday, July
19, 2019, it appears that the parties are at impasse.  On your side, the Drug
Enforcement Administration (DEA) has declined to limit the scope of the referenced
subpoenas.  And, in turn, on our side, the State of Colorado, through the Colorado
Board of Pharmacy (the Board) and the Prescription Drug Monitoring Program
(PDMP) at the Colorado Department of Regulatory Agencies (DoRA), has concluded
that it cannot voluntarily comply with the subpoenas in their current form because
they require an overbroad invasion into the protected privacy interests of the
Coloradoans whose prescription records are stored in the PDMP database.  In this
regard, the State believes that the subpoenas otherwise fail to comply with the
"reasonable relevance" standards for administrative subpoenas set out in *See v. City
of Seattle*, 387 U.S. 541, 544 (1967).

As we discussed on Friday, it appears that this matter should be presented to the
federal court in Denver pursuant to the procedures outlined in 21 U.S.C. § 876(c).
What follows here is our promised written explanation of the State's rationale for its
decision in this matter.

Page 2

## **Background Details**

The three subpoenas at issue here seek the following information:

- MK-19-631888 – A dispensing summary of all controlled substance prescriptions filled since January 1, 2014 to the present by any of **200** Redacted pharmacies in Colorado.[1]

- MK-19-656106 – A dispensing summary of all control substance prescriptions filled since January 1, 2014 to the present by any of **113** Redacted and Redacted pharmacies in Colorado.[2]

- MK-19-655844 –
    1. All data for all controlled substances prescribed since January 1, 2014 to the present by prescribers identified as the "top 10% as compared to all prescribers" with respect to six different demographic characteristics.
    2. All data for all controlled substances prescribed since January 1, 2014 to the present to patients identified as "the top 10% as compared to all patients" with respect to four different demographic characteristics.
    3. All data for all opioid prescriptions from May 23, 2018 to the present for a patient who has had a previous opioid prescription.
    4. All "unsolicited" reports sent to prescribing practitioners and dispensing pharmacies.

Based on conservative calculations by DoRA's staff, we estimate that the first two subpoenas alone call for the production of more than **26 million** prescription records. That estimate amounts to more than half, *i.e.*, **56.4%,** of the entire collection of prescription records in the PDMP database for the time period specified. (The database includes 46,639,150 prescription records from January 1, 2014 to June 20, 2019.[3])

---

[1] The subpoena's document demand encompasses the name and DEA registration number of the person authorizing the prescription, the prescription number, the name of the controlled substance dispensed, quantity dispensed, date dispensed, name and address of the patient, and method of payment. Additionally, the subpoena also demands all "unsolicited" reports sent to any of the same pharmacies from January 1, 2014 to present.

[2] This Redacted subpoena includes the same scope of information sought in the Redacted subpoena, described *infra* in Fn. 1.

[3] Data for the month of July is not yet final, and hence, the figures presented here are as of June 2019.

Page 3

In addition, because the multiple demographic characteristics listed in the third subpoena are likely not entirely overlapping, the third subpoena probably will require production of prescription records approaching a quarter of the entire PDMP database. Indeed, even if all of the demographics are perfectly overlapping – an unlikely assumption – the third subpoena's request for "outlier" patients and prescribers would result in the disclosure of all controlled substance prescriptions for nearly **450,000 patients** and more than **16,000 prescribers**. (At last check, the database had a total of 4,473,713 unique patients and 160,408 unique prescriber DEA numbers between January 1, 2014 and June 20, 2019.) Moreover, because of the multiple "outlier" demographic characteristics being sought, it would not be surprising at all if this third subpoena touches perhaps as many as a million patients and 30,000 prescribers.

As we have discussed in our prior consultations, the effort to compile the data requested by these subpoenas is not practically feasible for DoRA's staff and would have to be performed by the State's vendor Appriss Health in Louisville, Kentucky, which has direct control of the PDMP database. Appriss has notified the State that the effort to compile data in response to the first two subpoenas would take at least two weeks, but with regard to the third subpoenas, the work would take several months, and even then, Appriss is not confident that it would be able to collect all of the information requested.

Separately, as we discussed with you earlier, the "unsolicited reports" requested in the third subpoena do not include any specific prescription data. Rather, such messages only encourage the prescriber who receives them to log into the prescriber's PDMP account to access PDMP records. The email notice itself does not identify the patient in question. (We provided an exemplar of such messages in my email on June 24, 2019.) Hence, the "unsolicited reports" being requested here have no probative value in the context of the DEA's investigation.

## Constitutional Defects in the DEA's Subpoenas

With regard to the legal issues raised by the DEA's subpoenas, we are of course aware of the various court rulings that have enforced prior DEA efforts to obtain PDMP (or PDMP-like) data from Colorado and other states. *See, e.g.*, *U.S. Dep't of Justice v. Colo. Bd. of Pharmacy*, No. 10-cv-01116-WYD-MEH, 2010 WL 3547898, at *4 (D. Colo. Aug. 13, 2010); *see also Oregon Prescription Drug Monitoring Program v. U.S. Drug Enforcement Admin.*, 860 F.3d 1228, 1236 (9th Cir. 2017); *U.S. Dep't of Justice v. Ricco Jonas*, No. 18-MC-56-LM, 2018 WL 6718579, at *5 (D.N.H. Nov. 1, 2018), report and recommendation adopted sub nom. *U.S. Dep't of Justice v. Jonas*, No. 19-CV-030-LM, 2019 WL 251246 (D.N.H. Jan. 17, 2019); *U.S. Dep't of Justice v. Utah Dep't of Commerce*, No. 2:16-cv-00611-DN-DBP, 2017 WL 9131888, at *9 (D. Utah Mar. 10, 2017), *affirmed by* 2017 WL 3189868, at *8 (D. Utah July 27, 2017).

Page 4

None of those decisions, however, are controlling here.  Indeed, none of those cases involved what is presented here by the DEA's demands for gargantuan aggregations of data – what amounts to a wholesale commandeering of at least a quarter of Colorado's PDMP database.  The prior cases all involved requests for discrete, targeted data concerning specific prescribers or specific dispensers.  The subpoenas here are baldly non-specific, and they seek to create a federal replica of a large segment of the PDMP database for purposes of law enforcement fishing to find targets of opportunity for future prosecution.  In this respect, none of the prior cases have considered anything like what the DEA seeks through its subpoenas here.

In addition, none of the prior decisions addressed Fourth Amendment principles in light of the recent teaching by the U.S. Supreme Court in last year's *Carpenter v. U.S.*, -- U.S. --, 138 S. Ct. 2206, 2217 (2018).  Indeed, as the District of Massachusetts pointed out last month, the *Carpenter* decision makes clear that an overwhelming aggregation of otherwise publicly available information nevertheless implicates constitutionally protected privacy interests and thereby triggers the protections of the Fourth Amendment, especially when such data is digitized, allowing for minute inspection and cataloging of a person's private behavior.  *See* U.S. *v. Moore-Bush*, -- F. Supp. 3d --, 2019 WL 2341182, at *4-7 (D. Mass. June 4, 2019) (holding that law enforcement's capture of 8 months of digital video surveillance from a utility pole camera constituted a search subject to the Fourth Amendment because the video log aggregated vast amounts of digital information that could be compiled, catalogued, and searched in ways that invaded the intimacies of private life).

As the Court made clear in *Carpenter*, modern Fourth Amendment jurisprudence has "recognized some basic guideposts. First, that the Amendment seeks to secure 'the privacies of life' against 'arbitrary power.'  Second, and relatedly, that a central aim of the Framers was 'to place obstacles in the way of a too permeating police surveillance.'"  138 S. Ct. at 2214 (quoting *Boyd v. U.S.*, 116 U.S. 616, 630 (1886), and *U.S. v. Di Re*, 332 U.S. 581, 595 (1948)).  Relying on the hallmark *Katz* decision, the Court continued in *Carpenter* that "[a] person does not surrender all Fourth Amendment protection by venturing into the public sphere.  To the contrary, 'what [one] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.'"  *Id.* at 2217 (quoting *Katz v U.S.*, 389 U.S. 347, 35 (1967)).  The Court also observed that the kind of aggregation of data sought by the Government in that case was qualitatively different than the kinds of data collections upheld in prior cases because the data amounted to "a detailed chronicle of a person's physical presence compiled every day, every moment, over several years.  Such a chronicle implicates privacy concerns far beyond" those addressed in earlier cases.  *Id.* at 2220.

Page 5

Precisely the same qualitative difference applies to the DEA subpoenas here, which seek vast troves of data concerning hundreds of thousands of Coloradoans, data that will necessarily reveal the intimacies of these people's lives, including how frequently such persons needed prescribed controlled substances to manage their medical conditions, what those likely medical conditions were, including potentially embarrassing or genetically inheritable disorders or diseases that the person had never revealed to anyone other than his or her physician. In fact, the breadth of the subpoenas' requests for prescription records of "all controlled substances," not just opioid medications, necessarily means that the DEA would acquire information from which it can deduce certain sexual activities of the patients whose prescriptions are produced, as well as experimental treatments that some patients may have received through off-label indications of controlled substances. In other words, the DEA's subpoenas are an effort to create a "detailed chronicle" of a person's intimate medical history compiled "every day, every moment" over more than five years. There can be no question that such a chronicle implicates constitutionally significant privacy concerns.

## Undue Burden of the DEA's Subpoenas

In addition, independent of any violation of Fourth Amendment protections against unwarranted privacy intrusions, the DEA's subpoenas also run afoul of the lesser "reasonable relevance" standard under *City of Seattle* because they command the production of more than what is relevant for the proffered investigation of ▮Redacted▮, and ▮Redacted▮'s business practices. *See Becker v. Kroll*, 494 F.3d 904, 916 (10th Cir. 2007); *see also In re Subpoena Duces Tecum*, 228 F.3d 341, 349 (4th Cir. 2000) (noting that an administrative subpoena that is "far too sweeping in its terms to be regarded as reasonable" will trigger Fourth Amendment protections (quoting *U.S. v. Calandra*, 414 U.S. 338, 346 (1974))). The subpoenas clearly seek more than what is necessary to test those corporations' contentions of good faith practices, necessarily sweeping up the entire swath of all prescriptions for "all controlled substances" that have been filled by the two largest pharmacy chains in Colorado over an astoundingly long period of time. This hunt for the potential needle of uncontrolled drug distribution in a haystack of ordinary, everyday prescriptions will inevitably lead to the DEA acquiring overwhelming amounts of prescription records that have absolutely no bearing on the proffered investigation.

Additionally, the third subpoena's demands for "outlier" data on their face demonstrate a lack of any actual or particularized target of investigation. The data requests seek to create a freestanding federal fishing pond for later digital rod-and-reel casting that will hook targets for future investigation. In this regard, it is worth pointing out that the underlying premise of the subpoena – that the "top 10%" of prescription records is where criminal activity will be found – has no empirical basis and constitutes a guess that likely is fallacious. For example, the "top 10%" of prescribers writing prescriptions for controlled substances will likely be

Page 6

dominated by physicians with large surgical practices, such as orthopedic surgeons, but there is no empirical reason to expect that this "top 10%" is where uncontrolled distributors will be found.

In light of these various considerations, the subpoenas are not "sufficiently limited in scope," and therefore fail to comply with *City of Seattle*, 387 U.S. at 544.

## Conclusion

Based on the constitutional defects and undue burden of the three referenced subpoenas, the State requests that the DEA bring this matter before a federal judge pursuant to 21 U.S.C. § 876(c) for a determination as to whether the subpoenas' demands constitute a search subject to the Fourth Amendment's probable cause standard or otherwise impose an undue burden.

Respectfully,

FOR THE ATTORNEY GENERAL

CHRISTOPHER P. BEALL
Deputy Attorney General

Business & Licensing Section
720.508.6413
720.508.6037 (FAX)
Email:  Christopher.Beall@coag.gov

cc: Amanda Rocque & Marcy Cook, AUSA, U.S. Attorney's Office, District of Colorado

Kathryn E. Kohlman, DI, US DEA