# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-mc-00105-RM

UNITED STATES DEPARTMENT OF JUSTICE, DRUG
ENFORCEMENT ADMINISTRATION,

      Petitioner,

v.

STATE OF COLORADO BOARD OF PHARMACY,
PATTY SALAZAR, EXECUTIVE DIRECTOR OF THE COLORADO
DEPARTMENT OF REGULATORY AGENCIES, and
APPRISS, INC.,

      Respondents.

---

### EXHIBIT 2 TO DECLARATION OF CHRISTOPHER P. BEALL

---

**PHILIP J. WEISER**
Attorney General

**NATALIE HANLON LEH**
Chief Deputy Attorney General

**JUNE TAYLOR**
Chief Operating Officer

**ERIC R. OLSON**
Solicitor Genera



**STATE OF COLORADO**
**DEPARTMENT OF LAW**

**RALPH L. CARR**
**COLORADO JUDICIAL CENTER**
1300 Broadway, 10th Floor
Denver, Colorado 80203
Phone (720) 508-6000

**CHRISTOPHER P. BEALL**
Deputy Attorney General
**Business & Licensing Section**

Thursday, September 12, 2019

Kevin Traskos
Chief, Civil Division
United States Attorney's Office | District of Colorado
1801 California Street, Suite 1600
Denver, CO 80202

RE:    *In re Investigation of Case No. MK-15-0018*, U.S. Department of Justice –
       Drug Enforcement Administration
       -    Subpoena No. MK-19-823246 (█████████████ Denver, LLC)

Dear Kevin:

This letter follows telephone discussions over the last two weeks between your office
and mine and the U.S. Drug Enforcement Administration (DEA) concerning the
above-referenced subpoena to the Prescription Drug Monitoring Program (PDMP) at
the Colorado Department of Regulatory Agencies (DoRA).

By this letter, we wish to memorialize the position and rationale that the State of
Colorado has reached with regard to the data request in the instant subpoena,
which seeks a "pharmacy summary" of all controlled substances dispensed by
████████████ Denver, LLC, in Greenwood Village, Colorado, between January
1, 2014, and the present.  DoRA's preliminary estimate is that this subpoena seeks
disclosure of approximately 7,400 prescription transactions.

As we discussed, DoRA has offered to comply with the DEA's subpoena by producing
the entire set of ██████████'s prescription records in the PDMP database for
the specified time period, but with the patient identities in such data replaced by
uniquely associated pseudonyms so as to preserve the privacy of the patients whose
records are disclosed.  DoRA also has offered to cooperate with follow-up requests
from the DEA when the DEA determines on the basis of the information in the
initial production of PDMP data that a specific individual patient is the target of a
bona fide investigation of unlawful conduct, and to then disclose the specific
patient's identifying information (matching a previously disclosed pseudonym).

Based on our prior discussion, we understand that the DEA is unwilling to accept this two-step process proposed by DoRA.

We requested that you provide us with the DEA's rationale for why such a two-step process is not acceptable to the DEA.  Apart from indicating that the DEA believes its authority under the Controlled Substances Act entitles it as a matter of federal law to the entire set of PDMP records without any intermediate pseudonymization, you did not provide a specific argument as to why DoRA should violate the privacy interests of those Colorado patients for whom the DEA has no articulable basis to believe the patient engaged in unlawful conduct.

In light of the absence of any such argument, DoRA remains concerned that full disclosure of the entire set of ▉Redacted▉'s PDMP records will constitute an unreasonable intrusion on the privacy interests of patients who have done nothing wrong and who otherwise have a valid and enforceable expectation, expressed in Colorado law, *see* § 12-42.5-404(3)(g), CR.S., that their prescription records will not be disclosed to law enforcement without first a preexisting "bona fide investigation" that is specific to that individual patient.

As the U.S. Supreme Court made clear more than a generation ago in *Whalen v. Roe*, there is indeed a privacy interest in records of drug prescriptions.  *See* 429 U.S. 589, 599-600 (1977); *see also Douglas v. Dobbs*, 419 F.3d 1097, 1102 (10th Cir. 2005) ("[I]t seems clear that privacy in prescription records falls within a protected 'zone of privacy' and is thus protected as a personal right either 'fundamental' to or 'implicit in the concept of ordered liberty.'" (quoting *Palko v. Conn.*, 302 U.S. 319, 325 (1937); *Roe v. Wade*, 410 U.S. 113, 152 (1973))); *Pyle v. Woods*, 874 F.3d 1257, 1264 (10th Cir. 2017) ("Relying on the Supreme Court's opinion in *Whalen v. Roe*, this court held that the right to privacy protecting the disclosure of medical information extended to an individual's prescription drug records.").

Of course, as you know, the decision in *Whalen* found that New York's requirement to collect prescription drug records from physicians was not an impermissible invasion of patients' constitutional privacy interests.  *See* 429 U.S. at 602.  But, as Justice Brennan cautioned in his concurring opinion, the Court's decision was premised on the specific circumstances of the New York regulatory regime, which limited disclosure to "only a small number of public health officials," and the decision was explicitly not a validation of "broad dissemination," which Justice Brennan said "would clearly implicate constitutionally protected privacy rights, and would presumably be justified only by compelling state interests."  *Id*. at 606 (Brennan, J., concurring).  Additionally, the Tenth Circuit's decisions have made clear that the scope of a patient's privacy interest is a function of state law, where the particular state's law "can operate to diminish the privacy expectation in prescription records."  *Douglas* 419 F.3d at 1102 n.3; *see also Pyle* 874 F.3d at 1264.

In this context, then, it is crucial to evaluate Colorado's state law proscriptions concerning the scope of access to PDMP data, where these statutory provisions establish what patients in Colorado may reasonably expect with regard to the State's handling of their prescription records.  In this regard, Colorado's PDMP statute establishes that prescription data is available to law enforcement officials only "so long as the information released is specific to an individual patient, pharmacy, or practitioner and is part of a bona fide investigation, and the request for information is accompanied by an official court order or subpoena." § 12-42.5-404(3)(g), C.R.S.  The General Assembly provided for such law enforcement access pursuant to its declaration that "[e]lectronic monitoring of prescriptions for controlled substances provides a mechanism for law enforcement officials and regulatory boards to efficiently investigate **practitioner** behavior that is potentially harmful to the public." § 12-42.5-401(1)(d), C.R.S. (emphasis added). Importantly, this legislative declaration does **not** focus on law enforcement investigations of patients, but rather, only on "practitioner behavior."  *See id.*

In light of the General Assembly's attention on law enforcement investigations of practitioners rather than patients, and because the statute requires that law enforcement agencies' access to PDMP records must be contingent on a "bona fide investigation," it is reasonable for patients in Colorado to expect that their personal identities will not be revealed to law enforcement absent some articulable basis to believe that the patient himself has engaged in some unlawful conduct.

With these considerations in mind, we can see no basis for why the DEA requires the personal identity of a patient who has been prescribed a treatment of testosterone to address his sexual impotence.  Nor do we see a basis for why the DEA requires the personal identity of a patient who has been prescribed a stimulant to address her ADHD condition.  And similarly, there seems to be no reason for the DEA to know the personal identity of patients who receive other controlled-substance medicines to treat their depression or anxiety or other psychiatric conditions.  These patients' personal identities and their specific medical conditions would necessarily be revealed in the PDMP data requested by the instant subpoena.  But, the DEA has failed to establish any bona fide investigation into these patients' activities that would warrant the revelation of their identities and medications.  And because patients in Colorado are entitled to expect that their prescription records will remain inaccessible to law enforcement in the absence of a bona fide investigation of the specific individual patient, the DEA's subpoena here is therefore an unreasonable search and prohibited by the Fourth Amendment.  *See also Carpenter v. U.S.*, -- U.S. --, 138 S. Ct. 2206, 2217 (2018) ("A person does not surrender all Fourth Amendment protection by venturing into the public sphere.  To the contrary, 'what [one] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.'"  *Id.* at 2217 (quoting *Katz v U.S.*, 389 U.S. 347, 35 (1967)).

Page 4                                                          9/12/2019

In light of the foregoing, the State of Colorado requests that the DEA reconsider the position it has taken heretofore, and that it instead proceed in the two-step manner proposed by DoRA, that is, first to receive pseudonymized prescription records, and then second, to seek personal identification of such records when the DEA concludes that there is a bona fide basis to believe that a specific individual patient in those records has engaged in unlawful conduct.

We remain available to discuss this matter at your convenience.


Respectfully,

FOR THE ATTORNEY GENERAL

CHRISTOPHER P. BEALL
Deputy Attorney General

Business & Licensing Section
720.508.6413
720.508.6037 (FAX)
Email:  Christopher.Beall@coag.gov


cc: Kathryn E. Kohlman, DI, US DEA