**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-mc-00105-RM

UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT
ADMINISTRATION,

     Petitioner,

v.

STATE OF COLORADO BOARD OF PHARMACY,
PATTY SALAZAR, EXECUTIVE DIRECTOR OF THE COLORADO DEPARTMENT OF
REGULATORY AGENCIES, and
APPRISS, INC.,

     Respondents.

---

***AMICI CURIAE* BRIEF OF THE AMERICAN CIVIL LIBERTIES UNION AND
AMERICAN CIVIL LIBERTIES UNION OF COLORADO IN SUPPORT OF
RESPONDENTS**

**TABLE OF CONTENTS**

I.   Respondents May Raise Fourth Amendment Arguments to Resist the Subpoenas. ............... 2

  A.   Respondents may vindicate their own Fourth Amendment interests................................. 2

  B.   Respondents may raise Colorado patients' Fourth Amendment interests. ......................... 3

II.   People Have a Reasonable Expectation of Privacy in Their Sensitive Medical Information
    Held in Prescription Drug Monitoring Program Databases.................................................... 7

  A.   The sensitive nature of the private medical information contained in the Colorado PDMP
     creates a reasonable expectation of privacy...................................................................... 8

    1.   Prescription records reveal private and sensitive information. ....................................... 8

    2.   Society recognizes the expectation of privacy in prescription records as reasonable.... 10

  B.   Records held in the PDMP are not voluntarily conveyed by patients. ............................. 12

  C.   Older cases relied on by the DEA do not control the outcome here................................ 12

  D.   PDMP records share important traits with the location data in *Carpenter*, and thus deserve
    protection. ...................................................................................................................... 15

III.   Any Disclosure of Personally Identifiable PDMP Records Must Be Preceded by Either
    Notice to the Affected Patients or Issuance of a Search Warrant. ....................................... 17

# TABLE OF AUTHORITIES

## Cases

*Aid for Women v. Foulston*, 441 F.3d 1101 (10th Cir. 2006) ...................................... 3, 4

*Alderman v. United States*, 394 U.S. 165 (1969) ........................................................ 5, 6

*Arizona v. Gant*, 556 U.S. 332 (2009) ............................................................................... 7

*Barrows v. Jackson*, 346 U.S. 249 (1953) .................................................................... 3, 4

*Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007) ............................................................. 13

*Carpenter v. United States*, 138 S. Ct. 2206 (2018) ........................................... passim

*Doe v. Broderick*, 225 F.3d 440 (4th Cir. 2000) ............................................................. 9

*Doe v. Se. Pa. Transp. Auth.*, 72 F.3d 1133 (3d Cir. 1995) ......................................... 10

*Donovan v. Lone Steer, Inc.*, 464 U.S. 408 (1984) ................................................... 3, 19

*Douglas v. Dobbs*, 419 F.3d 1097 (10th Cir. 2005) .......................................... 8, 10, 14

*Eisenstadt v. Baird*, 405 U.S. 438 (1972) ........................................................................ 4

*Ferguson v. City of Charleston*, 532 U.S. 67 (2001) ................................................ 9, 11

*Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525 (8th Cir. 2005) ................. 5, 6

*In re Directives Pursuant to Section 105B of Foreign Intelligence Surveillance Act*,
       551 F.3d 1004 (FISA Ct. Rev. 2008).................................................................... 4, 6

*In re McVane*, 44 F.3d 1127 (2d Cir. 1995)................................................................ 6, 18

*In re Search Warrant*, 810 F.2d 67 (3d Cir. 1987) ......................................................... 3

*Katz v. United States*, 389 U.S. 347 (1967) ...................................................................... 7

*Kerns v. Bader*, 663 F.3d 1173 (10th Cir. 2011) .......................................................... 14

*King v. State*, 535 S.E.2d 492 (Ga. 2000) ...................................................................... 11

*Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. Waterfront Comm'n of N.Y. Harbor*,
       667 F.2d 267 (2d Cir. 1981)..................................................................................... 18

*Microsoft Corp. v. U.S. Dep't of Justice*, 233 F. Supp. 3d 887 (W.D. Wash. 2017)..................... 5

*Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin. (Or. PDMP)*,
    998 F. Supp. 2d 957 (D. Or. 2014) ............................................................. 8, 9, 10

*Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin. (Or. PDMP)*,
    860 F.3d 1228 (9th Cir. 2017) .............................................................................. 8

*Powers v. Ohio*, 499 U.S. 400 (1991) .................................................................... 4

*Pyle v. Woods*, 874 F.3d 1257 (10th Cir. 2017)................................................... 14

*Rakas v. Illinois*, 439 U.S. 128 (1978)............................................................... 5, 6

*Rothner v. City of Chicago*, 929 F.2d 297 (7th Cir. 1991) ................................... 4

*See v. City of Seattle*, 387 U.S. 541 (1967).......................................................... 3

*Singleton v. Wulff*, 428 U.S. 106 (1976) .............................................................. 3

*Smith v. Maryland*, 442 U.S. 735 (1979) .............................................................. 7

*State v. Skinner*, 10 So. 3d 1212 (La. 2009) ........................................................ 9

*Thurman v. State*, 861 S.W.2d 96 (Tex. Ct. App. 1993)...................................... 12

*Tucson Woman's Clinic v. Eden*, 379 F.3d 531 (9th Cir. 2004) ........................... 9

*U.S. Dep't of Justice v. Utah Dep't of Commerce*, No. 16-cv-611,
    2017 WL 3189868 (D. Utah July 27, 2017) ...................................................... 8

*United States v. Benitez-Arreguin*, 973 F.2d 823 (10th Cir. 1992).................... 6

*United States v. Miller*, 425 U.S. 435 (1976)....................................................... 7

*United States v. Sturm, Ruger, & Co., Inc.*, 84 F.3d 1 (1st Cir. 1996) ................. 2

*United States v. Westinghouse Elec. Corp.*, 638 F.2d 570 (3d Cir. 1980)................. 3, 4

*Whalen v. Roe,* 429 U.S. 589 (1977)............................................................. 12, 13

## Statutes and Regulations

21 U.S.C. § 827(b) ............................................................................................... 17

3 Colo. Code Regs. § 719-1-23.00.40................................................................... 4

Colo. Rev. Stat. § 12-280-403 .............................................................................. 4

Colo. Rev. Stat. § 12-280-407 ............................................................................ 12

**Other Authorities**

Am. Med. Ass'n, Code of Medical Ethics Opinion 3.2.1: Confidentiality ................................... 10

Am. Pharmacists Ass'n, Code of Ethics § II .............................................................. 10

Bernard Friedland, *Physician-Patient Confidentiality*, 15 J. Legal Med. 249 (1994) ................. 10

Jennifer D. Oliva, *Prescription Drug Policing: The Right to Protected Health Information Privacy Pre- and Post-Carpenter*, 69 Duke L.J. (forthcoming 2020) ........................................ 8

Lawrence O. Gostin, *Health Information Privacy*, 80 Cornell L. Rev. 451 (1995) .................... 11

Leo Beletsky, *Deploying Prescription Drug Monitoring to Address the Overdose Crisis: Ideology Meets Reality*, 15 Ind. Health L. Rev. 139 (2018) .................................... 11

Mary Madden, *Americans Consider Certain Kinds of Data to be More Sensitive than Others*, Pew Research Center (2014) ..................................................................... 16

New London Consulting & FairWarning, *How Privacy Considerations Drive Patient Decisions and Impact Patient Care Outcomes* (2011) ............................................ 11

Paul Ohm, *The Many Revolutions of Carpenter*, 32 Harv. J.L. & Tech. 357 (2019) .................. 15

Robert Baker, *Before Bioethics: A History of American Medical Ethics from the Colonial Period to the Bioethics Revolution* (2013) ............................................................. 10

### *AMICI CURIAE* BRIEF OF THE AMERICAN CIVIL LIBERTIES UNION AND AMERICAN CIVIL LIBERTIES UNION OF COLORADO IN SUPPORT OF RESPONDENTS

The American Civil Liberties Union and American Civil Liberties Union of Colorado ("*amici*") submit this brief in support of Respondents Colorado Board of Pharmacy and Patty Salazar's ("Respondents") opposition to Petitioner U.S. Department of Justice, Drug Enforcement Administration's ("DEA") petition to enforce two administrative subpoenas seeking hundreds of thousands of sensitive prescription records from the Colorado Prescription Drug Monitoring Program ("PDMP"). As explained in the accompanying motion for leave to file, *amici* have an interest in protecting Coloradoans' private medical records against unjustified access by law enforcement.

*Amici* offer three points. First, Respondents properly raise Fourth Amendment arguments in this case. As custodians of the PDMP and recipients of the DEA's subpoena, Respondents are entitled to argue in their own right that the subpoenas are unreasonable under the Fourth Amendment. Respondents are also entitled to assert the Fourth Amendment rights of individuals with records in the PDMP, because Respondents have a close relationship with them and they are prevented from doing so themselves by lack of notice of the subpoena.

Second, Coloradoans have a reasonable expectation of privacy in the prescription records at issue in this case because they reveal intimate, private, and potentially stigmatizing details about patients' health, including details of those patients' underlying medical conditions. As the Supreme Court explained in *Carpenter v. United States*, when law enforcement seeks records from a third party in which the subject of the investigation has a reasonable expectation of privacy, use of an administrative subpoena is unreasonable under the Fourth Amendment, and a

1

warrant is required instead. Absent exigent circumstances, disclosure of personally identifiable patient prescription records from the PDMP to law enforcement must be pursuant to a warrant.

Third, while Respondents' proposal to remove patients' names and other identifying details from the PDMP records before producing them to the DEA will provide significant protection to affected Colorado residents, that resolution may not fully address Fourth Amendment concerns. Respondents contemplate a follow-up process in which the DEA can request certain patients' full prescription histories—including names and other identifying details—without a warrant. To protect those patients against unconstitutional search, the Court should either order that such patients receive notice of the impending disclosure so that they can seek to quash the request pre-enforcement, or order that the DEA must obtain a search warrant in light of the serious privacy concerns.

## I.      Respondents May Raise Fourth Amendment Arguments to Resist the Subpoenas.

In cases similar to this one, the DEA has argued that state PDMP administrators and custodians may not assert the Fourth Amendment privacy interests of state residents with sensitive prescription records in the database. *See, e.g.*, Br. of Appellee at 31 n.7, *U.S. Dep't of Justice v. Ricco Jonas*, No. 19-1243 (1st Cir. Aug. 7, 2019). To the extent the DEA seeks to make that argument on reply in this case, it is incorrect on two counts.

### A.  Respondents may vindicate their own Fourth Amendment interests.

First, just like any other recipient of a subpoena for business or customer records, Respondents are entitled as record custodians to argue that the subpoenas for PDMP records are unreasonable under the Fourth Amendment. *See, e.g.*, *United States v. Sturm, Ruger, & Co., Inc.*, 84 F.3d 1, 3 (1st Cir. 1996) ("the Fourth Amendment is available to the challenger as a defense against enforcement of the subpoena" (citing *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415

(1984)). At a minimum, "the Fourth Amendment requires that [a] subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive." *See v. City of Seattle*, 387 U.S. 541, 544 (1967). In arguing that the subpoenas are overly broad and seek information not relevant to the DEA's investigation, Respondents are properly invoking their right to "obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply." *Id*. at 545.

### B. Respondents may raise Colorado patients' Fourth Amendment interests.

Second, under the doctrine of third-party standing, Respondents may properly raise the privacy interests of individuals with records in the PDMP. The general rule against third-party standing is a prudential one, which "should not be applied where its underlying justifications are absent." *Singleton v. Wulff*, 428 U.S. 106, 114 (1976). In cases like this one, the policies underlying that "rule of practice" are "outweighed by the need to protect . . . fundamental rights" when "it would be difficult if not impossible for the persons whose rights are asserted to present their grievance before any court." *Barrows v. Jackson*, 346 U.S. 249, 257 (1953).

As the PDMP's custodians, Respondents plainly overcome the prudential limits on third-party standing because (1) they have a close relationship with the individuals whose records the PDMP holds in trust, and (2) those individuals are hindered from protecting their own interests independently. *See Aid for Women v. Foulston*, 441 F.3d 1101, 1111–12 (10th Cir. 2006).

As to the first factor, like other custodians of medical records bound by duties of confidentiality, Respondents have a close relationship with the people whose records are collected and safeguarded in the PDMP. *See, e.g.*, *In re Search Warrant*, 810 F.2d 67, 70–71 (3d Cir. 1987) (third-party standing for physician to protect medical records on behalf of patients); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 574 (3d Cir. 1980) (employer to

protect medical records on behalf of employees); *see also* Colo. Rev. Stat. § 12-280-403(1) (directing Board of Pharmacy to establish PDMP and collect patient prescription information); 3 Colo. Code Regs. § 719-1-23.00.40 (specifying 31 separate pieces of patient and prescription information that the PDMP must collect for each prescription filled by a Colorado pharmacy). That is plainly the kind of relationship that suffices to overcome the general preference against third-party standing. *See, e.g.*, *Powers v. Ohio*, 499 U.S. 400, 413–14 (1991) (criminal defendant on behalf of jurors); *Barrows*, 346 U.S. at 255–60 (white land-seller on behalf of prospective Black buyers); *In re Directives Pursuant to Section 105B of Foreign Intelligence Surveillance Act*, 551 F.3d 1004, 1008–09 (FISA Ct. Rev. 2008) (internet service provider on behalf of customers); *Aid for Women*, 441 F.3d at 1111–14 (physician on behalf of patients); *Rothner v. City of Chicago*, 929 F.2d 297, 300–01 (7th Cir. 1991) (video game distributer on behalf of minor customers).

And as to the second—and "more important," *Eisenstadt v. Baird*, 405 U.S. 438, 445 (1972)—third-party standing factor, the individuals whose records are the subject of the subpoena are hindered from advancing their own rights by the lack of notice of the subpoena. *Westinghouse Elec. Corp.*, 638 F.2d at 574 ("As a practical matter, the absence of any notice to the employees of the subpoena means that no person other than Westinghouse would be likely to raise the privacy claim. Indeed, this claim may be effectively lost if we do not hear it now."); *see also* ECF No. 1-1, at 16, 19 (DEA subpoenas requesting that Respondents "not disclose the existence of this request or investigation for an indefinite time period").

The DEA has argued elsewhere that third-party standing doctrine simply does not apply when it comes to Fourth Amendment rights at all because "Fourth Amendment rights are personal to each person and may not be asserted vicariously." Br. of Appellee at 31 n.7, *Ricco*

*Jonas*, No. 19-1243 (1st Cir.) (alteration omitted). But there is no such Fourth Amendment exception, and the DEA's argument selectively misreads precedent and is illogical.

To be sure, there are a few decisions where courts have erroneously pointed to cases applying the Fourth Amendment's exclusionary rule as establishing a general rule that "a plaintiff may not assert the Fourth Amendment rights of another person." *Microsoft Corp. v. U.S. Dep't of Justice*, 233 F. Supp. 3d 887, 913 (W.D. Wash. 2017) (citing *Rakas v. Illinois*, 439 U.S. 128 (1978), and *Alderman v. United States*, 394 U.S. 165 (1969)). Those courts are right inasmuch as the Supreme Court has made clear that third parties may not invoke the *exclusionary rule* to suppress evidence that was obtained in violation of the Fourth Amendment rights of others. However, that stricture applies only in "the context of a case considering the applicability of the exclusionary rule, a remedy used for Fourth Amendment violations in criminal cases but not in civil cases." *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 532 (8th Cir. 2005). As the Eighth Circuit has explained, "[t]he Supreme Court has never held (and neither have we) that associational standing is not available to [civil litigants] alleging Fourth Amendment violations." *Id.* Where a civil litigant seeks to advance the Fourth Amendment interests of another person, courts are to apply the familiar prudential test for third-party standing. *See id.* at 532–33.

Indeed, the Supreme Court's cases disapproving of vicarious invocation of Fourth Amendment rights have explicitly (and solely) concerned the costs and benefits of the exclusionary rule. *See Alderman*, 394 U.S. at 174 ("There is no necessity to exclude evidence against one defendant in order to protect the rights of another. No rights of the victim of an illegal search are at stake when the evidence is offered against some other party."); *Rakas*, 439 U.S. at 137–38. And the fact that exclusionary-rule cases fall outside the general rule for third-

party standing makes sense. In those cases, a criminal defendant is invoking the rights of another in order to seek relief for the defendant in his own case[1]—and it is not difficult to understand why courts would be reluctant to allow such claims, as "a defendant bears the burden of demonstrating that his or her own Fourth Amendment rights have been violated" in order to suppress evidence. *United States v. Benitez-Arreguin*, 973 F.2d 823, 827 (10th Cir. 1992). But in cases like this one (as well as the litany of other third-party standing cases reviewed above), a litigant is invoking the rights of another who cannot do so himself in order to protect the rights *of that other person*. That is classic third-party standing territory.

That there is no special rule of third-party standing for Fourth Amendment claims writ large is evident in appellate decisions permitting such claims. The Eighth Circuit, for example, has recognized that a school may stand in its students' shoes to challenge warrantless seizures of those students by a law enforcement official. *Waddle*, 427 F.3d at 533. The Foreign Intelligence Surveillance Court of Review has permitted an email service provider to advance "the Fourth Amendment rights of third-party customers" in resisting a national-security surveillance demand from the federal government. *In re Directives*, 551 F.3d at 1007–09. And the Second Circuit has permitted a Fourth Amendment challenge to a grand-jury subpoena to proceed without questioning the standing of respondents to invoke the privacy rights of their family members. *In re McVane*, 44 F.3d 1127, 1137 (2d Cir. 1995).

The DEA has sought to enforce a subpoena that both injures Respondents (as the State's PDMP custodians forced to comply) and threatens to invade the Fourth Amendment privacy rights of individuals whose private medical information resides in the database, and whose

---

[1] For example, in *Rakas*, two defendants sought to exclude evidence found in the locked glove compartment of another person's car. 439 U.S. at 130–31. And in *Alderman*, two defendants sought to suppress evidence obtained through eavesdropping in another person's place of business. 394 U.S. at 167–68.

privacy and confidentiality Respondents are charged with protecting, but who have no ability to challenge that impending harm. The Fourth Amendment arguments advanced by Respondents are properly before the Court.

## II.   People Have a Reasonable Expectation of Privacy in Their Sensitive Medical Information Held in Prescription Drug Monitoring Program Databases.

Where an individual has a reasonable expectation of privacy in an item or location to be searched, the search is "'per se unreasonable under the Fourth Amendment'" unless conducted pursuant to a judicial warrant. *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Only if there is no reasonable expectation of privacy, or if one of the "few specifically established and well-delineated exceptions" to the warrant requirement applies, may government officials conduct a warrantless search. *Id.* (quotation marks omitted). As the Supreme Court recently made clear, the warrant requirement applies even when the government seeks to compel a third party to produce records in which an individual has a reasonable expectation of privacy. *Carpenter v. United States*, 138 S. Ct. 2206, 2221–22 (2018). In that circumstance, the use of an administrative subpoena is unreasonable under the Fourth Amendment, and a warrant is required instead. *Id.*

In *Carpenter*, the Supreme Court made clear that the mere fact that records are held by a third party does not vitiate an individual's reasonable expectation of privacy under the Fourth Amendment. *Id.* at 2220. Instead, the Court explained, the cases on which the third-party doctrine is based—*United States v. Miller*, 425 U.S. 435 (1976), and *Smith v. Maryland*, 442 U.S. 735 (1979)—require a dual inquiry into "the nature of the particular documents sought" and whether they were "voluntar[ily] expos[ed]." 138 S. Ct. at 2219–20.

Here, both factors favor the conclusion that there is a reasonable expectation of privacy in the PDMP records sought by the DEA, and thus that the third-party doctrine does not apply.

7

Indeed, the Tenth Circuit has recognized that compelled production of a person's prescription records raises constitutional concerns. *Douglas v. Dobbs*, 419 F.3d 1097, 1102 (10th Cir. 2005). And, even before *Carpenter*, the District of Oregon correctly applied and distinguished *Miller* and *Smith*, concluding that the sensitivity of PDMP records and the lack of voluntariness in their creation and conveyance mean that they are protected by the Fourth Amendment.[2] *Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.* (*Or. PDMP*), 998 F. Supp. 2d 957, 963–67 (D. Or. 2014), *rev'd on standing grounds*, 860 F.3d 1228 (9th Cir. 2017). After *Carpenter*, it is all the more clear that that outcome is correct.[3]

### A. The sensitive nature of the private medical information contained in the Colorado PDMP creates a reasonable expectation of privacy.

The DEA's warrantless request in this case impinges on reasonable expectations of privacy because of "the particularly private nature of the medical information at issue," *Or. PDMP*, 860 F. 3d at 1235 (9th Cir.), in state PDMP databases.

### 1. Prescription records reveal private and sensitive information.

As the Supreme Court has explained, "[t]he reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without her consent." *Ferguson v. City of Charleston*,

---

[2] The District of Utah reached the opposite conclusion in an unpublished opinion, but its reasoning has been overtaken by *Carpenter*. Compare *U.S. Dep't of Justice v. Utah Dep't of Commerce*, No. 16-cv-611, 2017 WL 3189868, at *7 (D. Utah July 27, 2017) ("[T]he Fourth Amendment requires only that an administrative subpoena satisfy a 'reasonable relevance test.'"), *with Carpenter*, 138 S. Ct. at 2221–22 (holding that use of a subpoena is categorically unreasonable under the Fourth Amendment when it seeks "records in which the suspect has a reasonable expectation of privacy").

[3] *See generally* Jennifer D. Oliva, *Prescription Drug Policing: The Right to Protected Health Information Privacy Pre- and Post-*Carpenter, 69 Duke L.J. (forthcoming 2020), at 83, *available at* https://ssrn.com/abstract=3225000 ("*Carpenter* . . . . practically demands that courts put a stop to the DEA's widespread practice of conducting dragnet-style searches of state-PDMP prescribing data without judicial oversight and probable cause.").

532 U.S. 67, 78 (2001). That is so notwithstanding that the records are held by a third party—the

hospital—rather than by a patient themselves. Other courts have likewise held that there is a

reasonable expectation of privacy in medical records in the custody of third parties. *See, e.g.*,

*Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 550 (9th Cir. 2004) (requiring warrant for search

of medical records in abortion clinic because "all provision of medical services in private

physicians' offices carries with it a high expectation of privacy for both physician and patient");

*Doe v. Broderick*, 225 F.3d 440, 450 (4th Cir. 2000) ("[A] patient's expectation of privacy . . . in

his treatment records and files maintained by a substance abuse treatment center is one that

society is willing to recognize as objectively reasonable."); *State v. Skinner*, 10 So. 3d 1212,

1218 (La. 2009) ("[W]e find that the right to privacy in one's medical and prescription records is

an expectation of privacy that society is prepared to recognize as reasonable."). The prescription

records in this case entail the same privacy concerns.

　　　Drugs listed as controlled substances and tracked by the PDMP include a number of

frequently prescribed medications used to treat a wide range of serious medical conditions,

including anxiety disorders, panic disorders, post-traumatic stress disorder, weight loss

associated with AIDS, nausea and weight loss in cancer patients undergoing chemotherapy,

alcohol addiction withdrawal symptoms, opiate addiction, testosterone deficiency, gender

identity disorder/gender dysphoria, chronic and acute pain, seizure disorders, narcolepsy,

insomnia, attention deficit hyperactivity disorder, fibromyalgia, and diabetic neuralgia. *See* Decl.

of Karen McGovern ¶¶ 16, 30–31, ECF No. 18-1; *Or. PDMP*, 998 F Supp. 2d at 960.

　　　An individual's prescription records in the PDMP can reveal a great deal of private

medical information beyond just the medication prescribed. As the Tenth Circuit has explained,

because many drugs are approved only for treatment of specific diseases or disorders,

"[i]nformation contained in prescription records . . . may reveal other facts about what illnesses a person has." *Douglas*, 419 F.3d at 1102; *accord Doe v. Se. Pa. Transp. Auth.*, 72 F.3d 1133, 1138 (3d Cir. 1995) ("It is now possible from looking at an individual's prescription records to determine that person's illnesses, or even to ascertain such private facts as whether a woman is attempting to conceive a child through the use of fertility drugs."). A patient's prescription history can reveal their physician's confidential medical advice, their chosen course of treatment, their diagnosis, and even the stage or severity of their disorder or disease.

>    **2.   Society recognizes the expectation of privacy in prescription records as reasonable.**

"Medical records, of which prescription records form a not insignificant part, have long been treated with confidentiality." *Or. PDMP*, 998 F. Supp. 2d at 964. The Oath of Hippocrates, originating in the fourth century B.C.E., required physicians to maintain patient secrets. Bernard Friedland, *Physician-Patient Confidentiality*, 15 J. Legal Med. 249, 256 (1994). In American medical practice, a requirement to preserve the confidentiality of patient health information was included in the earliest codes of ethics of American medical societies in the 1820s and 1830s, the first Code of Medical Ethics of the American Medical Association in 1847, and every subsequent edition of that code, in the ethical codes of other health professionals, including pharmacists, and in the numerous state statutes recognizing the doctor–patient privilege. *See generally* Robert Baker, *Before Bioethics: A History of American Medical Ethics from the Colonial Period to the Bioethics Revolution* (2013); Am. Med. Ass'n, Code of Medical Ethics Opinion 3.2.1: Confidentiality, https://www.ama-assn.org/delivering-care/ethics/confidentiality; Am. Pharmacists Ass'n, Code of Ethics § II, https://www.pharmacist.com/code-ethics; Colo. Rev. Stat. § 13-90-107(d) (physician-patient privilege). Today, virtually all patients (97.2%) believe

that health care providers have a "legal and ethical responsibility to protect patients' medical records."[4]

The consequences of law enforcement gaining easy access to medical records are especially harmful. The strong and enduring guarantees of the confidentiality of patients' medical information are

> essential to the effective functioning of the health and public health systems. Patients are less likely to divulge sensitive information to health professionals if they are not assured that their confidences will be respected. The consequence of incomplete information is that patients may not receive adequate diagnosis and treatment of important health conditions.

Lawrence O. Gostin, *Health Information Privacy*, 80 Cornell L. Rev. 451, 490–91 (1995). As one court has explained, "[p]ermitting the State unlimited access to medical records for the purposes of prosecuting the patient would have the highly oppressive effect of chilling the decision of any and all [persons] to seek medical treatment." *King v. State*, 535 S.E.2d 492, 496 (Ga. 2000). The Supreme Court has similarly recognized that facilitating warrantless law enforcement access to medical information "may have adverse consequences because it may deter patients from receiving needed medical care." *Ferguson*, 532 U.S. at 78 n.14. What is true of medical privacy more broadly is also true of PDMPs: prescription monitoring "efforts that fail to adequately safeguard patient data do much more than harm individual rights; by undermining patient trust and creating a system of perverse incentives, they can push patients away from seeking appropriate, timely help." Leo Beletsky, *Deploying Prescription Drug Monitoring to Address the Overdose Crisis: Ideology Meets Reality*, 15 Ind. Health L. Rev. 139, 142 (2018).

---

[4] New London Consulting & FairWarning, *How Privacy Considerations Drive Patient Decisions and Impact Patient Care Outcomes* 10 (2011), http://www.fairwarning.com/whitepapers/2011-09-WP-US-PATIENT-SURVEY.pdf.

**B.  Records held in the PDMP are not voluntarily conveyed by patients.**

"Neither does the second rationale underlying the third-party doctrine—voluntary exposure—hold up when it comes to" records in the PDMP. *Carpenter*, 138 S. Ct. at 2220. Unlike the cancelled checks at issue in *Miller* and the dialed telephone numbers in *Smith*, the prescription records contained in the PDMP are not voluntarily conveyed. The decision to visit a physician and pharmacist to obtain necessary medical treatment is not in any meaningful sense voluntary. Obtaining medical care for a serious condition such as acute pain, seizure disorders, panic or anxiety disorders, AIDS, or opioid addiction is a course of action dictated by one's physical and psychological ailments. Opting to forgo care can leave a person debilitated, or even dead. As one court put it, "the rule in *Miller* pertains to objects or information voluntarily turned over to third parties. A decision to use a bank may be voluntary. A decision to use a hospital for emergency care is not." *Thurman v. State*, 861 S.W.2d 96, 98 (Tex. Ct. App. 1993) (citation omitted). Moreover, once a person has sought care, Colorado law requires pharmacists to report all prescriptions for schedule II–V drugs to the PDMP. Colo. Rev. Stat. § 12-280-407(1). Thus, apart from foregoing care, "there is no way to avoid leaving behind a trail of [medical] data." *Carpenter*, 138 S. Ct. at 2220. "As a result, in no meaningful sense does the [patient] voluntarily 'assume[ ] the risk' of turning over" this information. *Id.* (second alteration in original).

**C.  Older cases relied on by the DEA do not control the outcome here.**

The DEA is wrong in suggesting that the Supreme Court settled the Fourth Amendment question here in *Whalen v. Roe,* 429 U.S. 589 (1977). *See* ECF No. 1, at 20–26. In *Whalen*, the Court held that New York's collection of prescription records in an early computerized database did not violate patients' and doctors' right to informational privacy under the Due Process Clause of the *Fourteenth* Amendment. 429 U.S. at 600. The Court distinguished situations—not

presented by that case—"involv[ing] affirmative, unannounced, narrowly focused intrusions into individual privacy during the course of criminal investigations," where the *Fourth* Amendment would apply. *Id.* at 604 n.32. The DEA's investigative subpoenas to the PDMP in this case present precisely the Fourth Amendment question explicitly left open by *Whalen*.

Were the question in this case whether the State of Colorado could permissibly collect prescription records in its secure public health database in the first instance, *Whalen* would control, and would require a balancing of privacy interests against both governmental interests and the measures taken by the government to secure the data against unjustified further dissemination. *Id.* at 598–604. That is not the subject of the instant dispute. Instead, the question is whether a federal law enforcement agency's investigative requests for sensitive personal data implicate the Fourth Amendment. That question is resolved by asking whether people have a reasonable expectation of privacy in their prescription records held in the PDMP. *See Carpenter*, 138 S. Ct. at 2217. Because they do, a warrant is required.

Nor does *Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007), control here. *See* ECF No. 1, at 18. In *Becker*, a physician brought Section 1983 claims against several state actors, arguing, among other things, that her own rights under the Fourth Amendment had been violated when the Utah Medicaid Fraud Control Unit obtained her Medicaid billing records and related patient files during an investigation into her billing practices. 494 F.3d at 909. In holding that the physician's Fourth Amendment rights were not violated in that context, the Tenth Circuit reasoned that an "administrative subpoena is not subject to the same probable cause requirements as a search warrant." *Id.* at 916. That basic proposition is not in dispute here. *Becker*, however, did not discuss the question whether the physician's *patients* had a reasonable expectation of privacy in the particular records at issue there, nor whether there are circumstances when a

warrant is required *instead of* a subpoena. Because of the specific facts around the subpoena at issue in *Becker*—a Medicaid provider being asked for a limited, random sampling of Medicaid patients' records by a state agency overseeing Medicaid to investigate Medicaid billing practices—extending *Becker* to bless a law enforcement subpoena seeking 14,000 patients' records over a six-year period is not appropriate.

Moreover, both before and after *Becker*, the Tenth Circuit itself has *held open* the question whether a warrant is required for a search of prescription records and other medical records held by a third party. Two years before deciding *Becker*, the Tenth Circuit in *Douglas* addressed whether a prosecutor violated a suspect's Fourth Amendment rights by authorizing a police officer to apply for a court order to search the suspect's prescription records held by a pharmacy. After recognizing that people have a significant constitutional privacy interest in their prescription records, 419 F.3d at 1102, the court resolved the case on qualified immunity grounds, concluding that "[w]hether a warrant is required to conduct an investigatory search of prescription records . . . is an issue that has not been settled, and is an issue we need not decide in the present case." *Id*. at 1103.

A decade after *Becker*, the Tenth Circuit faced a damages action filed by two individuals whose prescription records were obtained from Utah's PDMP by a police officer without a warrant. *Pyle v. Woods*, 874 F.3d 1257 (10th Cir. 2017). The court again resolved the case on qualified immunity grounds, recognizing a privacy interest but leaving unresolved the question whether "a warrantless search of a prescription drug database by state law enforcement officials is unconstitutional." *Id.* at 1264. *See also Kerns v. Bader*, 663 F.3d 1173, 1184–85 (10th Cir. 2011) (Gorsuch, J.) ("[T]here's certainly room to debate whether and how third party doctrine should apply to medical records"). In light of *Carpenter*, of course, the third-party doctrine's

14

application to sensitive digital records has been called even more deeply into question,

demanding an interpretation of *Becker* that limits the case to its facts.

### D. PDMP records share important traits with the location data in *Carpenter*, and thus deserve protection.

In *Carpenter*, the Supreme Court held that the government conducts a Fourth

Amendment search when it acquires a person's cell site location information ("CSLI") from their

cellular service provider.[5] 138 S. Ct. at 2220. While recognizing that *Miller* and *Smith* will

continue to permit warrantless requests for certain kinds of data, like the bank records and dialed

phone numbers at issue in those cases, the Court "decline[d] to extend" the third-party doctrine

to the digital agglomerations of sensitive location data held by wireless carriers today. *Id*. In

reaching this conclusion, the Court provided several factors that distinguish CSLI from more

rudimentary forms of third-party-held data. *Id*. at 2217–20, 2223; *see also* Paul Ohm, *The Many*

*Revolutions of Carpenter*, 32 Harv. J.L. & Tech. 357 (2019) (discussing factors). Those factors

apply with full force to the records in the PDMP.

1. "Deeply revealing nature," 138 S. Ct. at 2223: Like CSLI, PDMP records "provide[]

an intimate window into a person's life." *Id*. at 2217. Knowing what medications a person takes,

and thus what medical conditions they have, is tremendously revealing. *See supra* Part II.A. That

is why people consider information about the "state of their health and the medicines they take"

to be among the most private information about them, deeming it more sensitive even than the

"details of [their] physical location over a period of time" at issue in *Carpenter*. Mary Madden,

*Americans Consider Certain Kinds of Data to be More Sensitive than Others*, Pew Research

---

[5] The Court only addressed searches of seven days or more of data, and reserved decision on lesser durations of CSLI. 138 S. Ct. at 2217 n.3. Here, the DEA seeks nearly *six years'* worth of PDMP records. ECF No. 1-1, at 16, 19.

Center (2014), https://www.pewinternet.org/2014/11/12/americans-consider-certain-kinds-of-data-to-be-more-sensitive-than-others.

2. "Depth, breadth, and comprehensive reach," 138 S. Ct. at 2223: The Supreme Court observed that CSLI differs from other more limited kinds of location data because it constitutes "an all-encompassing record of the holder's whereabouts," *id.* at 2217, because it is "continually logged for all of the 400 million devices in the United States—not just those belonging to persons who might happen to come under investigation," *id.* at 2218, and because the data is retained—and therefore accessible to police—for years, *id.* Likewise, the PDMP contains not just a smattering of recent prescriptions filled by a particular pharmacist, but an "all-encompassing record," *id.* at 2217, of every controlled substance prescription filled by every pharmacist in Colorado for every Colorado resident, which is retained in the system for years. "[T]his newfound tracking capacity runs against everyone," *id.* at 2218, and provides a window into people's most closely held "privacies of life," *id.* at 2214.

3. "Inescapable and automatic nature of its collection," *id.* at 2223: The Supreme Court explained that cell phone location information is not "truly 'shared' as one normally understands the term," both because carrying a cell phone is "indispensable to participation in modern society," and because once a person has an operational cell phone, it automatically and inescapably generates location data. *Id.* at 2220. Likewise, the decision to visit a physician and pharmacist to obtain necessary medical care is not in any meaningful sense voluntary, and once a patient has obtained a prescription from their doctor and filled it with their pharmacist, the pharmacist conveys the prescription to the PDMP "by dint of its operation," *id.*, with no volition or even knowledge of the patient. *See supra* Part II.B.

16

4. "Remarkably easy, cheap, and efficient compared to traditional investigative tools,"

138 S. Ct. at 2218: The central lesson of *Carpenter* is that courts cannot "mechanically apply[]"

the third-party doctrine to newer forms of digital-age records that provide the government with

powers of investigation that would have been unimaginable in past eras. *Id*. at 2214, 2219. Thus,

CSLI requires Fourth Amendment protection because, "[p]rior to the digital age, law

enforcement might have pursued a suspect for a brief stretch, but doing so 'for any extended

period of time was difficult and costly and therefore rarely undertaken.'" *Id*. at 2217 (citation

omitted). Today, by contrast, "[w]ith just the click of a button, the Government can access each

carrier's deep repository of historical location information at practically no expense." *Id*. at 2218.

Similarly, prior to centralized and computerized PDMPs, investigators would have been

limited by the recordkeeping and retention practices of individual pharmacies. *See, e.g.*, 21

U.S.C. § 827(b) (requiring pharmacies to keep records of controlled substance prescriptions for

two years). The power to call up a perfect record of more than eight years' worth of sensitive

prescription information[6] instantaneously, "with just the click of a button," *Carpenter*, 138 S. Ct.

at 2218, is categorically new. Thus, in order to "assure [ ] preservation of that degree of privacy

against government that existed when the Fourth Amendment was adopted," *id*. at 2214

(alteration in original), a warrant is required.

**III.     Any Disclosure of Personally Identifiable PDMP Records Must Be Preceded by Either Notice to the Affected Patients or Issuance of a Search Warrant.**

Respondents laudably seek to protect the Fourth Amendment rights of Colorado residents

with sensitive prescription records in the PDMP by proposing to anonymize patients' identifying

details before producing the target pharmacies' prescription histories to the DEA. It is within this

---

[6] *See* McGovern Decl. ¶ 15, ECF No. 18-1 ("From June 1, 2011 through November 4, 2019, the PDMP database contained 63,249,731 prescriptions.").
.

Court's power to modify the scope of the subpoenas to protect the privacy interests of Colorado patients. *See, e.g.*, *McVane*, 44 F.3d at 1136–38 (in investigation of corporate wrongdoing, permitting subpoena to seek financial records of corporation's directors, but preventing collection of financial records of directors' family members on the basis that "personal records of persons who are not themselves targets of the investigation . . . must face more exacting scrutiny than similar subpoenas seeking records solely from corporate participants"); *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. Waterfront Comm'n of N.Y. Harbor*, 667 F.2d 267, 274 (2d Cir. 1981) (approving district court's "modification of the subpoena to permit disclosure on a random basis of [the records of] only 10%" of the contributors to a labor union's political action committee, rather than all 450 contributors).

Requiring production of only de-identified PDMP records would go far toward protecting the Fourth Amendment rights of the 14,000 patients at issue. However, Respondents' proposed resolution may not fully vindicate the Fourth Amendment rights of Colorado patients. Respondents contemplate disclosing particular patients' full prescription information (including name and other personally identifying details) pursuant to warrantless follow-up requests from the DEA, *see* State Respondents' Br. in Opp. at 5, ECF No. 18, but to do so would violate those patients' Fourth Amendment rights. Because Coloradoans have a reasonable expectation of privacy in their sensitive prescription records in the PDMP, the Fourth Amendment requires the DEA to proceed via search warrant instead of with an administrative subpoena. *See supra* Part II.

In order for affected Coloradoans to argue for and receive the full scope of Fourth Amendment protection to which they are entitled, this Court should either (1) order Respondents to provide notice to any individual patients whose prescription records stand to be disclosed in personally identifiable form so that they may seek to quash the DEA's request on Fourth

Amendment grounds, or (2) hold that a warrant is required for law enforcement access to personally identifiable PDMP records.

The Supreme Court has long held that a key reason that subpoenas can be reasonable under the Fourth Amendment without satisfying the traditional warrant standard is that they entail notice to the recipient and an opportunity for pre-enforcement challenge. *See, e.g.*, *Donovan*, 464 U.S. at 415. This typically provides sufficient "protection for a subpoenaed [entity]" because it allows it to contest the subpoena on overbreadth, relevance, and burdensomeness grounds before being compelled to comply. *Id.* That is certainly adequate protection when it comes to "requests for evidence implicating diminished privacy interests or for a corporation's own books." *Carpenter*, 138 S.Ct. at 2221. However, when law enforcement "subpoena[s] third parties for records in which the suspect has a reasonable expectation of privacy," the person whose privacy interests are at stake lacks notice and thus has no ability to seek to quash or modify the subpoena on Fourth Amendment grounds. *Id.* In that circumstance— "where the suspect has a legitimate privacy interest in records held by a third party"—the Supreme Court has made clear that "a warrant is required." *Id.* at 2222.

Thus, to the extent the DEA may request personally identifiable patient prescription information from the PDMP at a later stage of the investigation, one of two things must happen to comply with the Fourth Amendment: the patient must receive notice so that they can seek to quash the subpoena before it is enforced, or the DEA must obtain a search warrant.[7] *Amici* respectfully urge the Court to provide such relief in its order disposing of this case.

---

[7] Pre-execution notice is also an important feature of search warrants. *See, e.g.*, *United States v. Freitas*, 800 F.2d 1451, 1456 (9th Cir. 1986). Notice of a search carried out pursuant to a warrant may be delayed for a reasonable time, however, upon "a showing of reasonable necessity." *United States v. Villegas*, 899 F.2d 1324, 1337 (2d Cir. 1990).

**CONCLUSION**

*Amici* respectfully urge the Court to modify the DEA's subpoenas as requested by

Respondents, as well as to order that any subsequent request for personally identifiable PDMP

data be preceded by either notice to affected individuals or the DEA's acquisition of a warrant.

Dated: December 13, 2019

Respectfully Submitted,

*s/ Sara R. Neel*

_____
Mark Silverstein
Sara R. Neel
ACLU Foundation of Colorado
303 East 17th Avenue, Suite 350
Denver, Colorado  80203
Tel: (720) 402-3107
Fax: (303) 777-1773
Email: msilverstein@aclu-co.org
        sneel@aclu-co.org

Nathan Freed Wessler
Brett Max Kaufman
American Civil Liberties Union Foundation
125 Broad St., 18th Fl.
New York, NY 10004
Tel: (212) 549-2500
Email: nwessler@aclu.org
        bkaufman@aclu.org

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2019, I electronically filed the foregoing ***AMICI CURIAE* BRIEF OF THE AMERICAN CIVIL LIBERTIES UNION AND AMERICAN CIVIL LIBERTIES UNION OF COLORADO IN SUPPORT OF RESPONDENTS** with the Clerk of the Court using the CM/ECF system.

*s/ Justine Gutierrez*

_____
Justine Gutierrez
Legal Assistant
