IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-mc-00105-RM

UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION,

    Petitioner,

v.

STATE OF COLORADO BOARD OF PHARMACY,
PATTY SALAZAR, EXECUTIVE DIRECTOR OF THE COLORADO DEPARTMENT OF REGULATORY AGENCIES, and
APPRISS, INC.,

    Respondents.

---

STATE RESPONDENTS' REPLY
IN SUPPORT OF MOTION FOR SETTING OF EVIDENTIARY HEARING

---

Respondents State of Colorado Board of Pharmacy and Patty Salazar, in her official capacity as Executive Director of the Colorado Department of Regulatory Agencies (herein, "State Respondents"), through their undersigned counsel, respectfully submit this reply to the "Response by the DEA in Opposition to the State Respondents' Motion for Setting of Evidentiary Hearing" ("DEA Motion Response") (ECF No. 27). Ultimately, the DEA Motion Response and its preceding "Reply Brief in Support of Petition for Expedited Order Enforcing Administrative Subpoenas" ("Reply Brief") (ECF No. 26) highlight exactly why a hearing is necessary: There are important factual disputes regarding the legal justification for requiring disclosure of patient names in requested prescription records, and these factual issues warrant an evidentiary hearing so that the Court may assess the credibility and reliability of the parties' presentations.

The DEA is correct that the underlying question before the Court – whether to require disclosure of patient identifying information in the State Respondents' production of PDMP records – is narrow. However, a narrow dispute does not diminish its importance nor abrogate the need for a hearing. The DEA's proposed "good faith" standard, imported from the IRS context, should not apply here because that analysis looks to the merits issue of whether to enforce an IRS summons, rather than the procedural question of whether to conduct an evidentiary hearing. Instead, the decision to grant an evidentiary hearing is within the Court's discretion, and here, an adversarial presentation of evidence is necessary to test the probative value of the DEA's assertions that patient identifying information truly is relevant to its proffered justification of its investigations of the pseudonymous Pharmacy #1 and Pharmacy #2, as opposed to being driven by the government's ulterior goal of locating currently unknown patients to be targeted for new and undisclosed investigations.

## ARGUMENT

**I. The Court should not apply the DEA's "good faith" standard.**

The DEA primarily relies on the IRS summons process, as detailed in *U.S. v. Clarke*, 573 U.S. 248 (2014), to propose a self-serving "good faith" initial burden on the DEA and a countervailing shifting burden on the State Respondents for showing an "improper motive" by the DEA, as the necessary precondition to an evidentiary hearing. *See* ECF No. 27 at 3-8 (DEA Motion Response). The DEA's proposed standard is inapplicable in this case's context for a number of reasons.

First, and most importantly, as the DEA Motion Response acknowledges, there is no controlling standard governing a party's request for an evidentiary hearing for a subpoena

enforcement matter.[1] ECF No. 27 at 3. Instead, whether to grant an evidentiary hearing falls squarely within this Court's discretion. In this regard, given the privacy concerns raised by the DEA's request, the Court's standard should be whether an evidentiary hearing will assist in the Court's understanding of the complex issues surrounding the nature of the DEA's request and State Respondents' objections.

Second, the situation in this case involving sensitive patient identifying information is distinguishable from the DEA's proposed IRS framework. As discussed at length in "State Respondents' Brief in Opposition to DEA Petition to Enforce Administrative Subpoenas" ("State Respondent's Brief"), patients have a constitutional right of privacy in their prescription drug records. *See* ECF No. 18 at 9 (citing *Douglas v. Dobbs*, 419 F.3d 1097, 1102 (10th Cir. 2005)). The privacy concerns implicated by the DEA's request for more than 14,000 patients' controlled substance prescription records invokes a more demanding level of scrutiny than in the tax context. These concerns should not be resolved with a conclusory and untested affidavit, as the DEA suggests.

Third, the Tenth Circuit upheld a request for an evidentiary hearing where a party makes a prima facie showing that enforcement of a subpoena would infringe individuals' constitutional rights. *In re First Nat'l Bank, Englewood, Colo.*, 701 F.2d 115, 118 (10th Cir. 1983) ("[W]hen a party makes 'a prima facie showing of arguable First Amendment infringement . . . the burden then [shifts] to the government to make the appropriate showing of need for the material.'" (quoting *United States v. Citizens State Bank*, 612 F.2d 1091, 1094 (8th Cir. 1990))); *see also*

---

[1] The DEA suggests that *U.S. Dep't of Justice v. Utah Dep't of Commerce*, 2:16-cv-611-DN-DBP, 2017 WL 3189868 (D. Utah July 27, 2017) may be applicable to the present case because the docket indicates that it involved a district court in the Tenth Circuit that enforced DEA subpoenas after oral argument but without an evidentiary hearing. In fact, the docket further indicates that neither of the parties nor the intervenor requested an evidentiary hearing on the matter. Therefore, that case is inapplicable to the present matter.

*National Commodity & Barter Ass'n v. Archer*, 31 F.3d 1521, 1527 (10th Cir. 1994). State Respondents have made just such a sufficient showing here by demonstrating that patients' Fourth Amendment rights would be infringed by the DEA's request for their patient identifying information—namely, that patients have a reasonable expectation of privacy in their digitized, aggregated PDMP records. ECF No. 18 at 8-20 (State Respondents' Brief).

In addition, State Respondents have sufficiently shown that the DEA's request for patient identifying information is not reasonably relevant to its investigations of the target pharmacies. *Id.* at 20-26. Contrary to the DEA's claim that State Respondents do not assert that the DEA's declaration is inaccurate, State Respondents have consistently challenged the DEA's proffered justifications for sensitive data. *Id.* at 22-23, 25-26. Specifically, State Respondents have argued that the DEA's demand for patient names is not relevant in purpose to its investigations of the pseudonymous target pharmacies – "Pharmacy #1" and "Pharmacy #2" – and that the demand is not limited in scope. *Id.* at 20-26. Indeed, State Respondents have extensively challenged the fundamental premise offered by the DEA that wholesale disclosure of all patient identities is necessary to an investigation of a pharmacy, as opposed to the ulterior goal of identifying new targets for new investigations, not of the pharmacies but of the patients. *Id.* These arguments by State Respondents directly challenge the credibility of the sweeping claims of the Hamilton Declaration and constitute a prima facie showing sufficient to warrant an evidentiary hearing into the DEA's purported "necessity" for patients' identifying information.[2]

---

[2] To the extent this Court agrees with the DEA's proposed "good faith" standard, State Respondents are prepared to present evidence undermining the government's pronouncement of good faith at an evidentiary hearing. Specifically, State Respondents would request an opportunity to present the testimony of a former DEA agent who would testify that the subpoenas in this case were not issued in good faith and are unnecessary to a targeted investigation of a pharmacy. In the alternative, if it would assist the Court in making a preliminary determination on the evidentiary hearing, State Respondents are similarly prepared to provide the Court with the witness' supplemental declaration.

## II. Factual disputes necessitate an evidentiary hearing.

The DEA Reply Brief and Motion Response highlight why an evidentiary hearing is necessary in this case. For example, the DEA states in its Reply Brief that, with deidentified data, the DEA cannot identify if the pharmacy dispensed multiple prescriptions to the same person who used numerous nicknames because those iterations purportedly would show up in the State's production as different pseudonyms. *See* ECF No. 26 at 29. This contention is fundamentally mistaken. An evidentiary hearing is essential to allow State Respondents' declarants to testify as to how the algorithm employed by Appriss addresses this concern, and to show instances where in fact the Appriss algorithm correctly matched a single pseudonym to multiple patient records rather than creating multiple pseudonyms. *Compare* ECF No. 18-1 at 7, ¶ 26 (McGovern Declaration).

The DEA further contends that State Respondents "removed, without explanation, other important fields that would not identify patients." ECF No. 26 at 36. An evidentiary hearing would allow State Respondents' declarants to testify as to how they compiled the data sets to include all *subpoenaed* information. Specifically, in the DEA's subpoena of Registrant #1, State Respondents were asked to provide a summary to "…include the prescribing practitioner and their DEA number, prescription number, drug(s), quantity, date prescribed, date dispensed, method of payment, MME, patient's name, date of birth, and address." ECF No. 1-1 at 16 (Hamilton Declaration, Attachment 1). State Respondents' declarants should be given the opportunity to elaborate on how the data sets already produced meet this request. Likewise, State Respondents' declarants should be allowed to explain why the data fields the DEA now says it needs (but did not request), such as "Drug Category, DEA Schedule, Units, and Days Supply," were not included, and how some actually could be derived from the data sets that were

provided to the Court and that the DEA now has in its possession. *See* ECF No. 26 at 36 (Reply Brief).

Furthermore, an evidentiary hearing will allow the State Respondents to show, through cross-examination of Ms. Hamilton (or any other DEA witness), how the pseudonymized data sets that have been provided allow the DEA to satisfy each of the stated investigative objectives identified in the Hamilton Declaration (ECF No. 1-1). For example, at an evidentiary hearing, the Court would hear the DEA's witnesses be forced to concede that the pseudonymous data allow the DEA to identify red-flags, such as whether a concerning number of patients reside at abnormal distances from the pharmacy, as well as information regarding the quantity of controlled substances dispensed. The deidentified data provides the quantity, volume, and strength of the controlled substances dispensed to an individual patient—the DEA does not need an actual name to make that determination. And should a pseudonymized patient raise a red flag, that patient's PDMP data can be obtained and the DEA will receive what is arguably more useful information about that particular patient, as it would encompass that patient's controlled substance history beyond just Pharmacy #1 or Pharmacy #2, but as to any pharmacy in the state. These are exactly the kind of issues that could be explored at an evidentiary hearing and would assist the Court in its ultimate decision on the subpoena enforcement matter.

### III. The DEA's other objections to an evidentiary hearing are unpersuasive.

The DEA outlines four reasons why an evidentiary hearing is not necessary in this case, which each fail to provide any real justification for its opposition. First, the DEA contends that an evidentiary hearing "might be inefficient" because State Respondents "identif[y] no specific topic or issue for the hearing." ECF No. 27 at 9. While State Respondents articulated a generalized desire for cross-examination, it is readily apparent why cross-examination of the

DEA declarant is necessary in this case to ensure a just outcome. The crux of the issue is whether the subpoenaed patient names are reasonably relevant to the underlying investigation of the pharmacies. State Respondents should be afforded an opportunity to test the Hamilton Declaration by showing how patient identification is not in fact necessary to achieve the DEA's stated goals. It is State Respondents' position that the pseudonymized data already provided to the DEA is sufficient, and in this context, the DEA's witnesses ought to be required to show precisely how the actually produced data fails to serve the investigative goal of analyzing the prescribing practices of the two target pharmacies.

Second, the DEA argues that an evidentiary hearing *could* delay a decision on enforcement of the subpoena. ECF No. 27 at 9 (DEA Motion Response). However, any delay, if at all, would be minimal and would nevertheless be warranted given the complexity of the issues and the significant privacy intrusion sought by the DEA.

The third and final reasons for not needing an evidentiary hearing are related, in that the DEA asserts that such a hearing could present a risk of unwarranted disclosure of the identities of the target pharmacies, and that the hearing would raise potential collateral procedural issues such as the law enforcement privilege. *Id.* at 9. State Respondents have no intention of straying beyond the use of "Registrant #1" and "Registrant #2" and would be willing to reasonably confine the inquiry to protect the integrity of the DEA's ongoing investigations and investigative techniques.

## CONCLUSION

**WHEREFORE**, the State Respondents respectfully request that the Court set an evidentiary hearing in this matter at the Court's convenience.

DATED at Denver, Colorado this 3rd day of January, 2020.

                PHILIP J. WEISER
                Colorado Attorney General

                */s/ Christopher P. Beall*
                CHRISTOPHER P. BEALL
                Deputy Attorney General

                Pamela D. Jackson
                Krista F. Batchelder
                Robert C. Staley
                Colorado Department of Law
                1300 Broadway, 8th Floor
                Denver, Colorado 80203
                720-508-6413
                christopher.beall@coag.gov

                Counsel for State Respondents
                Colorado Board of Pharmacy and
                Patty Salazar, Executive Director of the Colorado
                Department of Regulatory Agencies